No. 81,657

In the Matter of TERENCE A. LOBER, *Respondent.*

(969 P.2d 885)

Opinion filed December 11, 1998.

*Marty M. Snyder*, deputy disciplinary administrator, argued the cause, and *Stanton A. Hazlett*, disciplinary administrator, was with her on the formal complaint for the petitioner.

*J. David Farris* and *Richard P. Senecal*, of Atchison, argued the cause for respondent, and *Terence A. Lober*, respondent, argued the cause pro se.

*Per Curiam:* This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against Terence A. Lober, an attorney admitted to the practice of law in the state of Kansas, whose business address is 117 Cherokee Street, Leavenworth, Kansas 66048.

The complaint against respondent charges him with violations of the Model Rules of Professional Conduct (MRPC) 1.1 (1998 Kan. Ct. R. Annot. 279) (competence), MRPC 1.3 (1998 Kan. Ct. R. Annot. 288) (diligence), MRPC 1.4 (1998 Kan. Ct. R. Annot. 296) (communication), MRPC 1.16 (1998 Kan. Ct. R. Annot. 341) (declining or terminating representation), MRPC 3.1 (1998 Kan. Ct. R. Annot. 350) (meritorious claims and contentions), MRPC 3.2 (1998 Kan. Ct. R. Annot. 351) (expediting litigation), MRPC 3.3 (1998 Kan. Ct. R. Annot. 354) (candor towards the tribunal), MRPC 4.1 (1998 Kan. Ct. R. Annot. 366) (truthfulness in statements to others), MRPC 8.1 (1998 Kan. Ct. R. Annot. 382) (bar admission and disciplinary matters), MRPC 8.4 (1998 Kan. Ct. R. Annot. 386) (misconduct), and Supreme Court Rule 207 (1998 Kan. Ct. R. Annot. 222).

Respondent did not file exceptions to the facts, which are deemed to be admitted pursuant to Rule 212(c) and (d) (1998 Kan. Ct. R. Annot. 236).

The panel unanimously found by clear and convincing evidence:

"2. Case No. A6882 (Count I) was opened because of a complaint Debby L. Egli-Woodward filed with the Disciplinary Administrator in January, 1997. . . . She retained Respondent in November, 1995, to handle her divorce. He filed her petition in January, 1996 and the court decreed the divorce final in May, 1996. Respondent did not file the Journal Entry until December 3, 1996, despite numerous requests for filing from Ms. Egli- Woodard. The court held a hearing on December 3, 1996 to show cause why the divorce should not be dismissed for failure to file a journal entry. As a result of agreements between the parties at that hearing, Respondent was responsible for filing a Qualified Domestic Relations Order. He did not file this order until April, 1997, three months after Ms. Egli-Woodard filed her ethics complaint. Beginning January 30, 1997, the Disciplinary Administrator wrote Respondent to investigate the complaint. Respondent did not answer the investigator's numerous inquiries until June 4, 1997 . . . after trying to convince Ms. Egli-Woodard to withdraw her complaint.

"3. Case No. A6913 (Count II) arose from Respondent's handling of a post divorce child support matter for his client Roger Bonner. By letter dated March 9, 1995, Respondent proposed a change in child support to the wife's counsel as follows: Mr. Bonner would increase monthly child support payments from $400 to $651, provide no health insurance, and be allowed to claim the three children as deductions on his income tax return. Mr. Farris, counsel for Mrs. Bonner, sent a proposed Journal Entry to Respondent in April 1995. Respondent wrote Mr. Bonner that their offer was accepted and he should pay the increased child support. Respondent never showed the proposed Journal Entry to his client. In 1997, Mr. Bonner's new attorney obtained a copy of the Journal Entry which did not address the health insurance issue or the tax deductions. This so angered Mr. Bonner that he reduced his child support payments to $400 a month and the settlement fell apart.

"4. Case No. A7101 (Count III) concerns Respondent's representation of Sam Cousin in a divorce petition filed in Leavenworth County by Terrie Cousin. Mr. Cousin paid Respondent $334.00 and asked that Respondent have venue changed to Wyandotte County where both Mr. and Mrs. Cousin resided. Although he knew, on May 16, 1997, that the divorce was scheduled for hearing on May 22, Respondent did not formally request a continuance. On May 21, he called opposing counsel who refused to agree to the continuance. Respondent had not and did not enter his appearance on behalf of his client. Nor did Respondent appear at the May 22 hearing; he had earlier told his client not to appear because he would get a continuance. The court granted the divorce by default and Mr. Cousin received the decree in the mail in early June, 1997. Mr. Cousin complained to the Disciplinary Administrator in August, 1997 after he could not get Respondent to help him despite 25 phone calls, most not returned by Respondent. With the default divorce granted, Respondent wrote to opposing counsel, to Mr. Cousin, and to Mr. Cousin's new attorney, regarding change of venue, and expressing shock at the default divorce. . . . Mr. Cousin never was successful in overturning

the default divorce, even with new counsel. When the Disciplinary Administrator's office investigated the matter, Respondent failed to cooperate.

"5. Case No. A7124 (Count IV) is based on a complaint by Carol J. Warme who retained Respondent in December, 1995 to represent her in a post divorce military retirement benefit matter. Respondent predicted that it would take 4 - 5 months to resolve the issues, but it was December, 1996 before an order was finalized. Then the payments beginning in January 1997 were lower than expected. Ms. Warme tried to reach Respondent with urgent phone messages between January and April, 1997. Respondent did not return her calls until April 28. He wrote a letter on her behalf in early May 1997, but thereafter, he neglected to return her calls or letters from June to September 1997. So in October 1997, she filed the disciplinary complaint. Despite letters from the Disciplinary Investigator in November and December, 1997, Respondent did not cooperate in the investigation of this complaint."

Based upon the above enumerated findings of fact, the hearing panel reached the following conclusions of law:

"Count I - Debby L. Egli-Woodward

"The panel finds, by clear and convincing evidence, that Respondent violated [MRPC] 1.3 and 3.2 by failing to diligently pursue Ms. Egli-Woodard's divorce to completion. Taking from May to December to file the Journal Entry unduly and inexcusably delayed the finality of her divorce. The panel also finds, by clear and convincing evidence, that Respondent's neglect of the divorce case, and Respondent's failure to cooperate with the investigation by the Disciplinary Administrator violated [MRPC] 8.4.

"Count II - Roger Bonner

"The panel finds, by clear and convincing evidence, that Respondent did not competently represent Mr. Bonner in his child support matter: Respondent misinformed Mr. Bonner that opposing counsel had accepted the proposed changes to child support. He neglected to send Mr. Bonner a copy of opposing counsel's draft Journal Entry that contained terms different from the proposed changes. . . . These facts clearly and convincingly support the panel's finding that Respondent violated [MRPC] 1.1 and 1.4. Respondent never did finalize the changes in child support from the time he was hired (April 1995) until he was fired in early 1997. This is clear and convincing evidence supporting the panel's findings that Respondent violated [MRPC] 1.3 and 3.2. Respondent's failure to act resulted in Mr. Bonner paying more child support without the tax advantages he sought and without releasing him from providing health insurance. Furthermore Mr. Bonner had to hire a second attorney to straighten the matters out. These facts are clear and convincing evidence to support the panel's finding that Respondent violated [MRPC] 8.4.

"Count III - Sam Cousin

"The panel finds, by clear and convincing evidence that Respondent violated

[MRPC] 1.1 and 1.3 because he did not competently or diligently represent Mr. Cousin in his divorce. Respondent failed to enter his appearance for Mr. Cousin in a timely manner, and did not appear at the scheduled May 22 hearing. The panel also finds, by clear and convincing evidence that Respondent violated [MRPC] 1.4 and 4.1 when he misinformed Mr. Cousin that the hearing had been continued, when he failed to return numerous (25) phone calls from Mr. Cousin, when he represented in letters to opposing counsel, and to Mr. Cousin, that there was an agreement between the attorneys to change venue. The panel finds, by clear and convincing evidence, that Respondent violated [MRPC] 3.1 and 3.3 by filing on June 13, 1997, his Motion to Change Venue and Motion to Set Aside Decree of Divorce based on fraud of improper venue, knowing full and well that K.S.A. 60-260 was not applicable to the situation. Respondent's failure to respond to the Disciplinary Administrator's investigator or otherwise cooperate with the investigation, is clear and convincing evidence to support our finding that Respondent violated [Supreme Court Rule] 207 and [MRPC] 8.1. All of the foregoing facts further support the panel's finding that Respondent's representation of Mr. Cousin violated [MRPC] 8.4.

"Count IV - Carol Warme

"Respondent's actions in representing Ms. Warme mirror his actions in representing Mr. Cousin, Mr. Bonner and Ms. Egli-Woodward: He neglected to return Ms. Warme's phone calls, he failed to expedite his handling of her benefits matter to a reasonable and timely conclusion. By the time of his representation of Ms. Warme, Respondent was aware that his practice was suffering from his alcoholism. Yet he failed to withdraw his representation of Ms. Warme as required by [MRPC] 1.16. The foregoing facts are clear and convincing evidence by which the panel finds Respondent in violation of not only [MRPC] 1.16 but also [MRPC] 1.3, [MRPC] 1.4, [MRPC] 3.2, and [MRPC] 8.4. Respondent also violated [MRPC] 8.1 and [Supreme Court Rule] 207 because he failed to respond or cooperate with the Disciplinary Administrator's investigation of Ms. Warme's complaint."

In considering aggravating factors, the hearing panel found respondent had received two prior informal admonitions in 1994 and in 1996 for lapses in diligence and communication; the four counts showed a pattern of multiple offenses; he failed to communicate with the Disciplinary Administrator or investigator or provide requested information except during the month proceeding the hearing when respondent began cooperating in the investigation, recognized his alcoholism, and stopped denying the validity of his clients' complaints; he has been admitted to the practice of law for 18 years and has sufficient experience so that he should have been attentive to his duties and responsibilities to his clients.

In considering matters of mitigation, the hearing panel found respondent recognizes he has suffered and continues to suffer from alcoholism and depression. He has admitted his transgressions and begun treatment for his alcoholism. He offered letters of support from people in his community. He has not been involved in misuse of funds, and desires to restrict, minimize, and continue his practice of law.

After reviewing all applicable factors, the hearing panel recommended that imposition of discipline against respondent be suspended and that he be placed on supervised probation for 2 years under the supervision of attorney Robert D. Beall, as to his practice of law, and Donald L. Zemites, as to his sobriety; that respondent abstain from the use of alcohol; and that both monitoring attorneys will immediately report any violation by respondent of the MRPC or his failing to abstain from alcohol. Any violations during the probationary period shall result in a show cause order issued from the Supreme Court of Kansas.

The Disciplinary Administrator's office agreed generally with the findings of the panel, but prior to the formal hearing before this court, noted the filing of additional complaints, most of which had been found to be without merit, although one had been referred to the review committee. The continued failure of prompt response by respondent caused the Disciplinary Administrator's office to withdraw its support for the proposed plan of supervised probation, and it requested that the court impose indefinite suspension from the practice of law.

At the time of the hearing before our court, respondent, through counsel, presented statements of Donald L. Zemites of the Kansas Lawyers Assistance Program Committee showing successful treatment for alcoholism and continued sobriety; showed that Robert D. Beall has been monitoring respondent's practice and continuing to work as his supervising attorney; showed respondent has obtained evaluation from Cherilyn DeSouza, M.D., who recommended and has commenced treatment for depression with medication and therapy on an ongoing basis; and presented a letter from The Bar Plan Mutual Insurance Company offering malpractice insurance coverage.

We have reviewed the record and conclude the factual findings and conclusions of law of the panel are supported by clear and convincing evidence.

While a minority of this court would order an immediate indefinite suspension from the practice of law, a majority of the court is in partial agreement with the recommendation of the hearing panel, so long as additional protections for the public and monitoring is involved.

IT IS THEREFORE ORDERED that imposition of discipline against Terence A. Lober be suspended and he is placed on supervised probation for a period of 2 years from the date of this order.

IT IS FURTHER ORDERED:

(1) During the probation period, respondent's practice of law is to be supervised by attorney Robert S. Beall, who will report to the Disciplinary Administrator on a quarterly basis concerning respondent's management of cases and legal matters entrusted to him. Any material deviation from proper practice or a known violation of the conditions of probation shall be immediately reported to the Disciplinary Administrator.

(2) Mr. Beall shall be afforded all immunities granted by Supreme Court Rule 223 (1998 Kan. Ct. R. Annot. 264) during the course of his activities as directed by this order. Respondent will allow Mr. Beall access to his files, his employees, his trust account, and his doctors.

(3) Respondent shall abstain from alcohol consumption and continue treatment for alcohol abuse under the general supervision of Donald L. Zemites of the Kansas Lawyers Assistance Program Committee, who shall report to the Disciplinary Administrator any abandonment of sobriety or conduct likely to result to the detriment of respondent's clients.

(4) Respondent shall continue treatment under the direction of Dr. Cherilyn DeSouza, whom he shall see on a regular basis, and take any prescribed medication and therapy as directed by Dr. DeSouza. Dr. DeSouza shall keep the Disciplinary Administrator informed of respondent's progress in such manner as the Disciplinary Administrator shall request.

(5) Respondent shall use his best efforts and obtain errors and admission liability coverage with The Bar Plan Mutual Insurance Company and furnish a certificate evidencing coverage to the Disciplinary Administrator and provide notification to the Disciplinary Administrator and the supervising attorney upon any change or cancellation of the policy.

(6) Respondent shall not violate any of the Model Rules of Professional Conduct during the term of his probation and thereafter. He shall immediately respond to inquires from the office of Disciplinary Administrator and supervising attorneys.

IT IS FURTHER ORDERED that, in the event respondent fails to abide by the conditions set out herein, a show cause order shall issue to respondent, and this court shall take whatever disciplinary actions it deems just and proper, including disbarment, without further formal proceedings.

IT IS FURTHER ORDERED that this order be published in the official Kansas Reports and that the costs of the proceeding be assessed to respondent.

DAVIS, J., not participating.

ROBERT J. LEWIS, JR., Judge, assigned.[1]

---

[1] **REPORTER'S NOTE**: Judge Lewis, Judge of the Kansas Court of Appeals, was appointed to hear case No. 81,657 vice Justice Davis pursuant to the authority vested in the Supreme Court by K.S.A. 20-3002(c).