No. 90,321

In the Matter of TERENCE A. LOBER, *Respondent*.

(78 P.3d 442)

Opinion filed October 31, 2003.

*Stanton A. Hazlett*, disciplinary administrator, argued the cause and was on the brief for petitioner.

*John H. Fields*, of Kansas City, argued the cause and was on the brief for respondent, and *Terence A. Lober*, respondent, argued the cause pro se.

*Per Curiam:* This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against the respondent, Terence A. Lober, an attorney practicing law in Leavenworth. The allegations contained in the two-count formal complaint arose out of Lober's representation of a client in a post-divorce matter. The hearing panel concluded that Lober had violated Kansas Rules of Professional Conduct (KRPC) 1.4 (2002 Kan. Ct. R. Annot. 340) (communication); KRPC 8.1(b) (2002 Kan. Ct. R. Annot. 445) (bar admission and disciplinary matters); and Supreme Court Rule 207(b) (2002 Kan. Ct. R. Annot. 247). The panel was unable to reach a unanimous recommendation regarding discipline. Lober filed exceptions to the final hearing report, contending that the hearing panel's findings were not supported by clear and convincing evidence and that the disciplinary recommendation of suspension by two of the panel members was too harsh.

### Hearing Panel's Findings of Fact and Conclusions of Law

In summary, the disciplinary panel made the following findings of fact and conclusions of law.

Patricia Leach retained Terence A. Lober to represent her after her ex-husband filed a motion seeking primary residential custody of their two teenage boys. In August 1999, the court granted the motion and ordered that the change of custody take effect when the ex-husband obtained a larger residence. Leach's child support obligation was to begin on the first day of the month after the

change of custody. The change of custody eventually took place on January 1, 2000.

In December, Lober wrote the ex-husband's attorney, E. Roger Horsky, asserting that the ex-husband was in arrears on child support. A letter from SRS was attached as evidence. Lober suggested that his client not pay support until the ex-husband's arrearage was eradicated. Thus, Leach did not believe her obligation began on February 1.

On January 3, 2000, Lober wrote Leach and sent her a copy of the December 1999 journal entry ordering the change of custody. In the letter, Lober informed Leach that he and Horsky would determine the amount of her child support obligation within the next 30 days and that the amount would be set forth in a court order. Leach denied receiving the letter.

On January 28, 2000, Horsky sent Lober a child support worksheet which reflected that Leach would owe $339 per month. The record did not establish whether Lober provided Leach with the worksheet. On May 9, 2000, Horsky submitted a journal entry to Lober and the court reflecting the amount of $339 as Leach's monthly child support obligation. Lober did not object to the journal entry or the calculation of child support. On May 30, the court executed the proposed journal entry and on June 2, 2000, the journal entry was filed. On July 19, 2000, the court entered an income withholding order. It appears that a proposed income withholding order was not presented to Lober by Horsky.

Leach testified that she learned of the income withholding order in August 2000 when her employer notified her that the amount would be withheld from her pay. By this time an arrearage had accrued since the court had ordered the support to be effective 30 days after the change of custody. Leach testified she immediately tried to contact Lober. When she eventually spoke with him, she asked how this had happened. He said he did not know but would find out. However, he never called her back. According to Leach, Lober failed to return numerous phone calls she made to him during August and September 2000.

On November 27, 2000, the Disciplinary Administrator sent Lober a letter informing him that Leach had filed a complaint. The

letter stated that an investigator would be assigned and that a written response was requested within 20 days.

By letter dated April 30, 2001, Sherri Loveland informed Lober that she would be investigating the Leach complaint. She asked Lober to respond as soon as possible and to call and set up an appointment to discuss the complaint.

In May 2001, Loveland ran into Lober at the Leavenworth County Courthouse and reminded him that he owed her a response. Lober told Loveland he had received her letter and would send her his response shortly.

On May 15, 2001, Lober sent a letter to Loveland indicating she would be receiving a "relatively large packet containing my complete written response to Ms. Leach's complaint . . . within a matter of a day or two." He also gave Loveland a list of dates when he would be available to meet with her. The next day, Loveland responded by letter indicating that she would like to have Lober's response and all documentation before meeting with him.

On July 24, 2001, Loveland sent another letter to Lober stating that she still had not received his written response and asking him to send it to her by August 1. She also stated, "If no response is forthcoming, I will be forced to conclude you do not intend to respond and will proceed with my investigating on that basis."

On August 11, 2001, Lober left the following message on Loveland's answering machine:

"I'm presuming you have not received my ten (10) page packet with its enclosures on DA8088 and I got a little bit worried because you'd put a 1 August deadline for me to respond. Please do not come to the conclusion that I am not going to get you a response. I will get the response into your hands either Monday or Tuesday. I will be in Lawrence on Tuesday anyway and I don't know why you don't have it in your hands already. It's been prepared since at least late July. It is rather lengthy; it's rather bulky."

Lober went on to say that he was happy to cooperate and that Loveland could stop by his office and look at his files at any time.

Loveland never received another communication from Lober and never received a written response from him. Loveland testified that Lober's failure to respond hindered the investigation because

she was unable to obtain the full picture of what had occurred without hearing Lober's side.

The hearing panel concluded that Lober violated KRPC 1.4 (communication) by failing to inform Leach that Horsky had prepared a proposed journal entry regarding child support, by failing to inform her of the amount of her child support obligation, by failing to inform her that she was in arrears in child support, and by failing to inform her that the court had executed the proposed order of support.

The hearing panel concluded that Lober violated KRPC 8.1(b) and Supreme Court Rule 207(b) when he knowingly failed to provide a written response to the Leach complaint as requested by the Disciplinary Administrator and the attorney investigator.

The panel was unable to make a unanimous recommendation regarding discipline. One panel member recommended that Lober be suspended for 60 days for violating Supreme Court Rule 207 and that he be publicly censured for violating KRPC 1.4. Another recommended that Lober be publicly censured for violating Supreme Court Rule 207 and KRPC 1.4. The third panel member recommended that Lober be suspended for 1 year for violating Supreme Court Rule 207 and KRPC 1.4.

*Analysis of Panel's Findings, Conclusions, and Recommendations*

In a disciplinary proceeding, this court considers the evidence, the findings of the disciplinary panel, and the arguments of the parties and determines whether violations of KRPC exist and, if they do, what discipline should be imposed. *In re Berg*, 264 Kan. 254, 269, 955 P.2d 1240 (1998). Any attorney misconduct must be established by substantial, clear, convincing, and satisfactory evidence. *In re Carson*, 252 Kan. 399, 406, 845 P.2d 47 (1993); see also Supreme Court Rule 211(f) (2002 Kan. Ct. R. Annot. 260) (misconduct to be established by clear and convincing evidence).

This court views the findings of fact, conclusions of law, and recommendations made by the disciplinary panel as advisory, but gives the final hearing report the same dignity as a special verdict by a jury or the findings of a trial court. Thus, the disciplinary panel's report will be adopted where amply sustained by the evi-

dence, but not where it is against the clear weight of the evidence. See *In re Carson*, 252 Kan. at 406; *In re Farmer*, 242 Kan. 296, 299, 747 P.2d 97 (1987); *State v. Zeigler*, 217 Kan. 748, 755, 538 P.2d 643 (1975); *State v. Klassen*, 207 Kan. 414, 415, 485 P.2d 1295 (1971). When the panel's findings relate to matters about which there was conflicting testimony, this court recognizes that the panel, as the trier of fact, had the opportunity to observe the witnesses and evaluate their demeanor. Therefore, we do not reweigh the evidence or pass on the credibility of witnesses. *In re Rumsey*, 276 Kan. 65, 76, 71 P.3d 1150, 1158 (2003).

### *Issue 1: Does Clear and Convincing Evidence Support the Panel's Finding that Lober Violated KRPC 1.4?*

First, the panel found that Lober violated KRPC 1.4(a), which requires a lawyer to "keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information."

The hearing panel reached the following conclusion on this issue:

"In this case, the Respondent violated KRPC 1.4(a) when he failed to inform [Leach] that Mr. Horsky prepared a proposed journal entry regarding child support, when he failed to inform her of the amount of her child support obligation, when he failed to inform her that she was in arrears in child support, and when he failed to inform her that the Court executed the proposed order of child support."

Lober takes exception to each portion of the panel's conclusion on this issue. He testified his client knew her obligation to pay support began 30 days after the change of custody and that he "believed" he had informed her of the amount. While Lober did not have written communication with his client on some issues, he testified that he had several telephone conversations with Leach regarding the arrearage and her child support obligation. He further argues that circumstantial evidence supports a determination that she was aware of her obligation to pay $339 per month beginning February 1. Lober emphasized that Leach was familiar with the legal process and issues involving child support because of past disputes with her ex-husband.

The evidence regarding Lober's communication with Leach was conflicting. However, Lober testified that it was "very possible" and "probably accurate" that the way Leach learned that her child support obligation was $339 per month was through her employer after it had received the income withholding order. When asked if he had provided Leach a copy of the journal entry submitted by Horsky on May 9, Lober responded: "Oh, I'm sure I did. When she contacted me and told me that there was an income withholding order." Lober stated he did not know the date he received the signed journal entry. He continued: "It floated around the courthouse for a month. Why didn't I pick up the phone and call her? Hindsight tells me that would have been a better way to do it, and I probably should have."

Hence, his own testimony provides evidence that he did not inform Leach that Horsky had proposed a journal entry, did not advise her of the $339 obligation, and did not advise her the court had entered the journal entry.

Additionally, the hearing panel apparently found Leach's testimony to be credible, including her testimony that Lober never told her that he had determined that her ex-husband did not owe her money and, therefore, her obligation to pay support began February 1.

Consequently, there was clear and convincing evidence to support the conclusion that Lober violated KRPC 1.4.

### Issue 2: Does Clear and Convincing Evidence Support the Hearing Panel's Finding that Lober Violated KRPC 8.1(b)?

KRPC 8.1(b) provides, in relevant part, that an attorney shall not "knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority." In addition, Supreme Court Rule 207(b) requires an attorney to "aid the Supreme Court, the Disciplinary Board, and the Disciplinary Administrator in investigations concerning complaints of misconduct, and to communicate to the Disciplinary Administrator any information he or she may have affecting such matters."

The hearing panel concluded:

"The Respondent knew that he was required to forward a written response to the initial complaint — he had been instructed to do so by the Disciplinary Administrator by letter and by the attorney investigator, personally, at the Leavenworth County Courthouse and by letter. Because the Respondent knowingly failed to provide a written response to the initial complaint filed by Ms. Leach, as requested by the Disciplinary Administrator and the attorney investigator, the Hearing Panel concludes that the Respondent violated KRPC 8.1(b) and Kan. Sup. Ct. R. 207(b)."

Lober has not filed an exception to the panel's finding that he violated Supreme Court Rule 207. He does take exception, however, to the panel's finding that he violated KRPC 8.1. Lober contends that KRPC 8.1's requirement that an attorney "knowingly" failed to cooperate connotes a failure that is intentional rather than merely negligent. Lober argues that he did not intentionally or purposefully refuse to cooperate; rather, he failed to cooperate as the result of being involved in time-consuming litigation and because of secretarial difficulties. Accordingly, Lober urges this court to set aside the panel's finding that he "knowingly" failed to cooperate.

We reject this argument, finding that there is clear and convincing evidence that Lober "knowingly" did not cooperate with the disciplinary authorities. "Knowingly" is defined as: "1. Having or showing awareness or understanding; well-informed . . . . 2. Deliberate; conscious." Black's Law Dictionary 876 (7th ed. 1999).

Lober's actions meet both definitions. Lober admitted he received the November 27, 2000, letter from the Disciplinary Administrator. Further, he acknowledged that he met Loveland at the courthouse and agreed to provide her a response. He also acknowledged receiving Loveland's July 24, 2001, letter. Through his conversations with Loveland it is evident that he knew he had missed deadlines; he promised to meet newly established deadlines. Yet, several months passed without a response. Further, in 1998, Lober was disciplined for violations of several KRPCs, including a violation of KRPC 8.1. Therefore, he should have had an understanding of its provisions and the consequences of a failure to cooperate with a disciplinary investigation. Additionally, when Lober let deadlines pass without sending a reply and, in the final instance,

without renewing efforts to obtain additional time for a response, he made a conscious and deliberate choice.

Lober's argument that his failure to cooperate must be intentional is flawed. The terms "intentional" and "knowing" are not synonymous. See the quotation after "knowledge" in Black's Law Dictionary 876, quoting John Salmond, Jurisprudence 380-81 (Glanville L. Williams ed., 10th ed. 1947). Although an attorney's motives and intentions might be relevant as aggravating or mitigating factors when considering appropriate discipline, proof of intent or motive is not necessary to establish a violation of KRPC 8.1.

There is clear and convincing evidence that Lober's failure to respond to the Disciplinary Administrator and investigator's requests for information was knowing and that he therefore violated KRPC 8.1.

### Issue 3: What is the Appropriate Discipline?

In light of Lober's admitted violation of Supreme Court Rule 207 and our determination that there is clear and convincing evidence of a violation of KRPC 1.4 and 8.1, we must next consider the appropriate discipline.

"To determine the appropriate discipline we must evaluate the nature of the duty violated, the attorney's mental state, the potential or actual injury caused by the misconduct, and the existence of aggravating or mitigating factors. ABA Compendium of Professional Responsibility, ABA Standards for Imposing Lawyer Sanctions § 3.0 (2003) (hereinafter ABA Standards). The discipline must be based on the specific facts and circumstances of each case, so other disciplinary actions provide little guidance. [Citation omitted.] Historically, we have applied the ABA Standards for Imposing Lawyers Sanctions as a guide for determining the appropriate discipline." In re Rumsey, 276 Kan. 65, 78, 71 P.3d 1150 (2003) (citing In re Wagle, 275 Kan. 63, 75-76, 60 P.3d 920 [2003]).

See In re Kellogg, 274 Kan. 281, 292, 50 P.3d 57, 65-66 (2002); In re Wall, 272 Kan. 1298, 1308-11, 38 P.3d 640 (2002); In re Bailey, 268 Kan. 63, 65, 986 P.2d 1077 (1999); Internal Operating Rules of the Kansas Board for Discipline of Attorneys, E.3 (2002 Kan. Ct. R. Annot. 307).

In making a recommendation for discipline, the hearing panel determined that Lober had knowingly violated his duties and that

his conduct had caused potential injury to Leach and actual injury to the legal profession. As aggravating factors, the panel considered that Lober had been disciplined on five previous occasions, that he had intentionally failed to cooperate during the disciplinary process, and that he had substantial experience in the practice of law (20 years). As mitigating factors, the panel considered that Lober's misconduct did not appear motivated by dishonesty or selfishness and that he had suffered a heart attack shortly before receiving the Disciplinary Administrator's letter and had reduced his work load as a result.

The most significant aggravating factor is Lober's prior record of discipline. In 1994, the Disciplinary Administrator's office informally admonished Lober for having violated KRPC 1.3 (2002 Kan. Ct. R. Annot. 328) (diligence) and KRPC 1.4 (communication). He was again informally admonished in 1996 for having violated KRPC 1.3 (diligence); KRPC 1.4 (communication); and KRPC 1.7 (2002 Kan. Ct. R. Annot. 361) (conflict of interest: general rule). In 1998, this court placed Lober on probation for 2 years for the following violations arising out of four disciplinary complaints: KRPC 1.1 (2002 Kan. Ct. R. Annot. 316) (competence); KRPC 1.3 (diligence); KRPC 1.4 (communication); KRPC 1.16 (2002 Kan. Ct. R. Annot. 395) (declining or terminating representation); KRPC 3.1 (2002 Kan. Ct. R. Annot. 406) (meritorious claims and contentions); KRPC 3.2 (2002 Kan. Ct. R. Annot. 408) (expediting litigation); KRPC 3.3 (2002 Kan. Ct. R. Annot. 411) (candor toward the tribunal); KRPC 4.1 (2002 Kan. Ct. R. Annot. 426) (truthfulness in statements to others); KRPC 8.1 (bar admission and disciplinary matters); KRPC 8.4 (2002 Kan. Ct. R. Annot. 449) (misconduct); and Supreme Court Rule 207. See *In re Lober*, 266 Kan. 404, 969 P.2d 885 (1998). Lober was on probation when Leach filed the complaint leading to this action. On two occasions in 2000, the Disciplinary Administrator's office informally admonished Lober for having violated KRPC 1.1 (competence); KRPC 1.3 (diligence); KRPC 1.4 (communication); and for two violations of KRPC 1.16 (declining or terminating representation).

The ABA Standards provide for suspension in three circumstances which apply in this case, specifically, when a lawyer: (1)

engages in a pattern of neglect and causes injury or potential injury to a client (Standard 4.42[b]); ( 2) knowingly engages in conduct that is a violation of a duty owed to the profession and causes injury or potential injury to a client, the public, or the legal system (Standard 7.2); and (3) has been reprimanded for the same or similar misconduct and engages in further similar acts of misconduct that cause injury or potential injury to a client, the public, the legal system, or the profession (Standard 8.2).

As previously discussed, Lober's conduct in this case, which resulted in injury to his client and the legal system, was knowing. Additionally, Lober's prior discipline reflects a pattern of failing to communicate with clients and of knowingly failing to cooperate with disciplinary investigations. Prior admonitions and probation have apparently been ineffective in bringing an end to this behavior which harms clients and the legal system. Consequently, the court unanimously determines that a 1-year suspension is the appropriate discipline.

IT IS THEREFORE ORDERED that Terence A. Lober be and he is hereby suspended from the practice of law in the state of Kansas for a period of 1 year, commencing as of the date of this order.

IT IS FURTHER ORDERED that Terence A. Lober shall comply with Supreme Court Rule 218 (2002 Kan. Ct. R. Annot. 279); at the end of the 1-year suspension, respondent will be reinstated upon furnishing proof of compliance thereof to the Clerk of the Appellate Courts.

IT IS FURTHER ORDERED that this opinion be published in the official Kansas Reports and that costs be assessed against the respondent in the amount certified by the office of the Disciplinary Administrator.

DAVIS, J., not participating.

RICHARD D. GREENE, J., assigned