No. 104,496

In the Matter of TERENCE A. LOBER, *Respondent.*

(241 P.3d 81)

*Opinion filed October 15, 2010.*

*Stanton A. Hazlett*, Disciplinary Administrator, argued the cause and was on the formal complaint for the petitioner.

No appearance by respondent.

*Per Curiam*: This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against the respondent, Terence A. Lober, of Leavenworth, Kansas, an attorney admitted to the practice of law in Kansas in 1979.

On September 15, 2009, the office of the Disciplinary Administrator filed a formal complaint against the respondent alleging violations of the Kansas Rules of Professional Conduct (KRPC). The respondent failed to file an answer to the formal complaint. A hearing was held on the complaint before a panel of the Kansas Board for Discipline of Attorneys on November 19, 2009. The respondent failed to appear at this hearing. The hearing panel determined that respondent violated KRPC 1.1 (2009 Kan. Ct. R. Annot. 410) (competence); 1.3 (2009 Kan. Ct. R. Annot. 426) (diligence); 1.4(a) (2009 Kan. Ct. R. Annot. 443) (communication); 1.5 (2009 Kan. Ct. R. Annot. 460) (fees); 1.15(b) (2009 Kan. Ct. R. Annot. 507) (safekeeping property); 8.4(d) (2009 Kan. Ct. R. Annot. 602) (engaging in conduct prejudicial to the administration of justice); 8.1(b) (2009 Kan. Ct. R. Annot. 594) and Kansas Supreme Court Rule 207(b) (2009 Kan. Ct. R. Annot. 303) (failure to cooperate in disciplinary investigation); and Kansas Supreme Court Rule 211(b) (2009 Kan. Ct. R. Annot. 321) (failure to file answer in disciplinary proceeding). Upon conclusion of the hearing, the panel made the following findings of fact and conclusions of law, together with its recommendation to this court:

## "FINDINGS OF FACT

. . . .

### *"Complaints filed by [J.T.] and [J.S.]*

"2.   [J.T.] was convicted by his plea of aggravated battery in Nemaha County, Kansas. On April 26, 2006, [J.T.] was sentenced to sixty-six months in prison. The Court granted [J.T.'s] request for probation.

"3.   Later, [J.T.] violated the terms and conditions of his probation and was sent to prison. After [J.T.] was sent to prison, his family was upset and wanted to see if there was a way to get him out of prison.

"4.   In March, 2007, [C.M.], [J.T.'s] mother, contacted Thomas M. Dawson about representing [J.T.]. Mr. Dawson agreed to research the matter for $5,000. Subsequently, Mr. Dawson and the Respondent met with [C.M.]. At that time, Mr. Dawson informed [C.M.] that in order for him to proceed, he would require an additional $40,000 in attorney fees.

"5.   [C.M.] declined to retain Mr. Dawson for an additional $40,000. However, [J.T.] wanted to meet with Mr. Dawson and the Respondent. Mr. Dawson and the Respondent went to the prison and met with [J.T.]. Following that meeting, [J.T.] talked with his grandmother, [J.S.], about borrowing some money to retain the Respondent to file a motion to set aside [J.T.'s] guilty plea.

"6.   [J.S.] agreed to assist [J.T.] and paid Mr. Lober $10,000, to file a motion to set aside [J.T.'s] guilty plea in October 2007. The Respondent agreed to proceed quickly and would get a motion to set aside the guilty plea on file.

"7.   On October 1, 2007, [J.S.] sent the Respondent an electronic mail message inquiring about the status of the case. The following day, the Respondent replied. The Respondent indicated that he had been in Colorado handling a federal appellate case. The Respondent assured [J.S.] that he would be able to get [J.T.] into court in late October or early November, 2007.

"8.   On October 12, 2007, the Respondent indicated that he would have the motion ready within the following two weeks. The Respondent also indicated that he had an appointment to meet with [J.T.] on Saturday, October 13, 2007. The Respondent, however, did not file a motion in behalf of [J.T.] nor did he see [J.T.] in prison.

"9.   On November 9, 2007, the Respondent again assured [J.S.] that he was working on the motion for [J.T.]. The Respondent indicated that he would file the motion within the next seven to ten days. The Respondent did not file a motion in behalf of [J.T.] as promised.

"10.   On November 13, 2007, the Respondent promised to go and see [J.T.] in prison on the following Thursday. The Respondent did not go to see [J.T.] as promised.

"11.   The Respondent explained, on November 21, 2007, that he had been ill with the flu and that he would attend to [J.T.'s] motion as soon as possible.

"12.   Despite that [J.S.] sent the Respondent three electronic mail messages in early December, 2007, [J.S.] did not hear from the Respondent until December

27, 2007. In that note, the Respondent stated that he would see [J.T.] in prison on December 28, 2007. The Respondent did not keep the appointment with [J.T.] on December 28, 2007.

"13.     After the electronic mail message [was] sent by the Respondent on December 27, 2007, neither [J.T.], [C.M.], nor [J.S.] ever heard from the Respondent again. The Respondent never filed a motion to set aside [J.T.'s] guilty plea.

"14.     On January 22, 2008, on February 15, 2008, and on February 26, 2008, Martin W. Mishler, an attorney related to [J.T.], wrote to the Respondent requesting an accounting of the $10,000 and a refund of the balance of the advanced fee. Additionally, Mr. Mishler requested that the Respondent provide an explanation of his failure to file a motion to set aside the guilty plea. The Respondent never responded to Mr. Mishler's letters.

"15.     [J.T.] and [J.S.] filed complaints against the Respondent. Thereafter, the Disciplinary Administrator docketed the complaints against the Respondent.

"16.     On February 22, 2008, the Disciplinary Administrator notified the Respondent that the complaints had been docketed. The Disciplinary Administrator directed the Respondent to provide a written response to the complaints.

"17.     Stephen W. Cavanaugh was appointed to investigate [J.T.'s] and [J.S.'s] complaints. On March 24, 2008, and April 15, 2008, Mr. Cavanaugh wrote to the Respondent directing the Respondent to provide a written response to the complaints. The Respondent failed to provide a written response to the complaints.

*"Complaint filed by [F.D.]*

"18.     In March, 2008, [F.D.] retained the Respondent to represent him in a criminal case. [F.D.] paid the Respondent $500 for the representation.

"19.     At the outset, [F.D.] provided the Respondent with photographs and witness statements. [F.D.] did not retain a copy of these items.

"20.     [F.D.'s] first appearance was scheduled for March 24, 2008. The Respondent informed [F.D.] that his personal appearance was not necessary and that the Respondent would appear in his behalf.

"21.     After the first appearance, [F.D.] spoke by telephone with the Respondent. The Respondent informed [F.D.] that he had spoken with the prosecutor and that the prosecutor was going to dismiss the criminal case. [F.D.] relied on the Respondent and believed that the case had been dismissed.

"22.     In June, 2008, [F.D.] learned that the court had issued a warrant for his arrest for failing to appear in court. [F.D.] repeatedly called the Respondent by telephone, but was unable to reach him. Approximately three weeks later, the Respondent left a voice mail message for [F.D.]. In the message, the Respondent stated that his father had passed away and that he was out of state. [F.D.] never heard from the Respondent again.

"23.     [F.D.] was required to pay $100 to have the arrest warrant recalled.

"24.     The Respondent never returned the photographs and witness statements to [F.D.]. Additionally, the Respondent never returned any unearned fees to [F.D.]. [F.D.] retained a new attorney, Gary Nelson, to represent him in the

criminal case. Mr. Nelson was able to negotiate a reduction of the charges and obtained a diversion for [F.D.].

"25.  In August, 2008, [F.D.] filed a complaint against the Respondent. The Disciplinary Administrator docketed the complaint and, thereafter, Mr. Cavanaugh was appointed to investigate the complaint.

"26.  On August 27, 2008, the Disciplinary Administrator directed the Respondent to provide a written response to the initial complaint filed by [F.D.] within 20 days.

"27.  On September 8, 2008, and on November 12, 2008, Mr. Cavanaugh wrote to the Respondent and directed the Respondent to provide a written response to [F.D.'s] complaint. The Respondent did not provide a written response to the complaint.

### "Formal Proceedings

"28.  On September 15, 2009, the Disciplinary Administrator filed a Formal Complaint regarding [J.T.'s], [J.S.'s], and [F.D.'s] complaints. The Disciplinary Administrator sent a copy of the Formal Complaint and Notice of Hearing to the Respondent at his last registration address, *via* certified United States mail. The package containing the Formal Complaint and Notice of Hearing that was sent to the Respondent's last registration address was returned and marked 'not deliverable as addressed, unable to forward.'

"29.  Additionally, the Disciplinary Administrator also sent a copy of the Formal Complaint and Notice of Hearing to an additional address that the Respondent had provided in an earlier disciplinary proceeding . . . *via* certified United States mail. The package containing the Formal Complaint and Notice of Hearing that was sent to the Respondent's address in . . . Colorado, was also returned. The package was marked 'returned to sender, unclaimed, unable to forward, return to sender.'

"30.  The Respondent did not file an Answer to the Formal Complaint.

### "CONCLUSIONS OF LAW

"1.  Based upon the findings of fact, the Hearing Panel concludes as a matter of law that the Respondent violated KRPC 1.1, KRPC 1.3, KRPC 1.4, KRPC 1.5, KRPC 1.15, KRPC 8.1, KRPC 8.4, Kan. Sup. Ct. R. 207, and Kan. Sup. Ct. R. 211, as detailed below.

"2.  The Respondent failed to appear at the hearing on the Formal Complaint. It is appropriate to proceed to hearing when a Respondent fails to appear only if proper service was obtained. Kan. Sup. Ct. R. 215 governs service of process in disciplinary proceedings. That rule provides, in pertinent part as follows:

'(a)  Service upon the respondent of the formal complaint in any disciplinary proceeding shall be made by the Disciplinary Administrator, either by personal service or by certified mail to the address shown on the attorney's most recent registration, or at his or her last known office address.

. . . .

'(c)   Service by mailing under subsection (a) or (b) shall be deemed complete upon mailing whether or not the same is actually received.'

In this case, the Disciplinary Administrator complied with Kan. Sup. Ct. R. 215(a) by sending a copy of the Formal Complaint and the Notice of Hearing, *via* certified United States mail, postage prepaid, to the address shown on the Respondent's most recent registration. Additionally, the Disciplinary Administrator forwarded a copy of the Notice of Hearing and the Formal Complaint to an address previously provided by the Respondent in . . . Colorado. The Hearing Panel concludes that the Respondent was afforded the notice that the Kansas Supreme Court Rules require.

"3.   Lawyers must provide competent representation to their clients. KRPC 1.1. 'Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.' The Respondent failed to thoroughly prepare for the representation of [J.T.] and [F.D.]. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 1.1.

"4.   Attorneys must act with reasonable diligence and promptness in representing their clients. *See* KRPC 1.3. The Respondent failed to diligently and promptly represent his clients, [J.T.] and [F.D.], by failing to timely advance their matters. Because the Respondent failed to act with reasonable diligence and promptness in representing his clients, the Hearing Panel concludes that the Respondent violated KRPC 1.3.

"5.   KRPC 1.4(a) provides that '[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.' In this case, the Respondent violated KRPC 1.4(a) when he failed to keep [J.T.] and [F.D.] informed regarding the representations. The Respondent failed to meet with [J.T.] in prison. Also, the Respondent failed to inform [F.D.] that his personal appearance in court was required. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 1.4(a).

"6.   According to KRPC 1.5(a), '[a] lawyer's fee shall be reasonable.' The Respondent [and Dawson] attempted to charge [J.T.] $40,000 to file a motion to set aside a guilty plea. A fee of $40,000 is *per se* unreasonable. KRPC 8.4(a) prohibits attorneys from violating or attempting to violate the Kansas Rules of Professional Conduct. By attempting to charge [J.T.] $40,000, the Respondent attempted to violate KRPC 1.5. As such, the Hearing Panel concludes that by virtue of KRPC 8.4(a), the Respondent violated KRPC 1.5.

"7.   Lawyers must deal properly with the property of their clients. Specifically, KRPC 1.15(b) provides:

'(b)   Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.'

In this case, on at least three occasions, Mr. Mishler requested that the Respondent provide an accounting of the advanced fee of $10,000 and Mr. Mishler also requested that the Respondent refund the unused portion of the $10,000. The Hearing Panel concludes that the Respondent violated KRPC 1.15(b) when he failed to refund the unearned fees paid by [J.S.].

"8.   'It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice.' KRPC 8.4(d). In this case, the Respondent engaged in 'conduct that is prejudicial to the administration of justice' when he failed to take any action in [J.T.'s] behalf and when he informed [F.D.] that the pending criminal case was going to be dismissed. As a result of the Respondent's failure in this regard, no motion was filed in behalf of [J.T.], and a bench warrant was issued for [F.D.'s] arrest. As such, the Hearing Panel concludes that the Respondent violated KRPC 8.4(d).

"9.   Lawyers must cooperate in disciplinary investigations. KRPC 8.1(b) and Kan. Sup. Ct. R. 207(b) provide the requirements in this regard. '[A] lawyer in connection with a . . . disciplinary matter, shall not: . . . knowingly fail to respond to a lawful demand for information from [a] . . . disciplinary authority . . . .' KRPC 8.1(b).

   'It shall be the duty of each member of the bar of this state to aid the Supreme Court, the Disciplinary Board, and the Disciplinary Administrator in investigations concerning complaints of misconduct, and to communicate to the Disciplinary Administrator any information he or she may have affecting such matters.' Kan. Sup. Ct. R. 207(b).

The Respondent knew that he was required to forward a written response to the initial complaint—he had been instructed to do so in writing by the Disciplinary Administrator and by the attorney investigator. Because the Respondent knowingly failed to provide a written response to the initial complaints filed by [J.T.], [J.S.], and [F.D.], as requested by the Disciplinary Administrator and the attorney investigator, the Hearing Panel concludes that the Respondent violated KRPC 8.1(b) and Kan. Sup. Ct. R. 207(b).

"10.   The Kansas Supreme Court Rules require attorneys to file Answers to Formal Complaints. Kan. Sup. Ct. R. 211(b) provides the requirements:

   'The Respondent shall serve an answer upon the Disciplinary Administrator within twenty days after the service of the complaint unless such time is extended by the Disciplinary Administrator or the hearing panel.'

In this case, the Respondent violated Kan. Sup. Ct. R. 211(b) by failing to file a written Answer to the Formal Complaint. Accordingly, the Hearing Panel concludes that the Respondent violated Kan. Sup. Ct. R. 211(b).

## "AMERICAN BAR ASSOCIATION
## STANDARDS FOR IMPOSING LAWYER SANCTIONS

"In making this recommendation for discipline, the Hearing Panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to

be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"*Duty Violated*. The Respondent violated his duty to his clients to provide competent and diligent representation and adequate communication. The Respondent violated his duty to the public and the legal profession to maintain his personal integrity. Finally, the Respondent violated his duty to the legal profession to cooperate in disciplinary investigations.

"*Mental State*. The Respondent knowingly and intentionally violated his duties.

"*Injury*. As a result of the Respondent's misconduct, the Respondent caused actual injury to [J.S.], potential injury to [J.T.], and actual injury to [F.D.].

"*Aggravating or Mitigating Factors*. Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following aggravating factors present:

"*Prior Disciplinary Offenses*. The Respondent has been disciplined on a number of occasions:

'1.   On May 23, 1994, in B5807, the Disciplinary Administrator informally admonished the Respondent for having violated KRPC 1.3 and KRPC 1.4.

'2.   On February 26, 1996, the Disciplinary Administrator informally admonished the Respondent for having violated KRPC 1.3, KRPC 1.4, and KRPC 1.7.

'3.   On December 11, 1998, the Kansas Supreme Court placed the Respondent on probation for two years for having violated KRPC 1.1, KRPC 1.3, KRPC 1.4, KRPC 1.16, KRPC 3.1, KRPC 3.2, KRPC 3.3, KRPC 4.1, KRPC 8.1, KRPC 8.4, and Kan. Sup. Ct. R. 207. In those cases, the Respondent failed to diligently file a journal entry, the Respondent failed to provide a client with a copy of a proposed Journal Entry, the Respondent failed to return telephone calls, and the Respondent failed to cooperate in disciplinary investigations. The Respondent remained on probation until December 10, 2000. *See In re Lober*, 266 Kan. 404, 969 P.2d 885 (1998).

'4.   On June 21, 2000, in DA7352, the Disciplinary Administrator informally admonished the Respondent for having violated KRPC 1.16.

'5.   Also on June 21, 2000, in DA7394, the Disciplinary Administrator informally admonished the Respondent for having violated KRPC 1.1, KRPC 1.3, KRPC 1.4, and KRPC 1.16.

'6.   On October 31, 2003, the Kansas Supreme Court suspended the Respondent from the practice of law for a period of one year for having violated KRPC 1.4, KRPC 8.1(b), and Kan. Sup. Ct. R. 207(b). *See In re Lober*, 276 Kan. 633, 78 P.3d 442 (2003). [Footnote: Following the 1-year suspension, on March 11, 2005, the Kansas Supreme Court reinstated the Respondent's license to practice law in the State of Kansas.]

'7.   On April 3, 2009, the Kansas Supreme Court indefinitely suspended the Respondent from the practice of law in the State of Kansas for having

violated KRPC 1.1, KRPC 1.2, KRPC 1.3, KRPC 1.4(a), KRPC 3.2, KRPC 8.4(d) and KRPC 8.4(g). *See In re Lober*, 288 Kan. 498, 204 P.3d 610 (2009).'

"*Dishonest or Selfish Motive*. The Respondent's misconduct included keeping unearned fees. Failing to refund money owed to a client[ ] amounts to dishonest and selfish conduct.

"*Multiple Offenses*. The Respondent violated KRPC 1.1, KRPC 1.3, KRPC 1.4, KRPC 1.5, KRPC 1.15, KRPC 8.1, KRPC 8.4, Kan. Sup. Ct. R. 207, and Kan. Sup. Ct. R. 211.

"*Bad Faith Obstruction of the Disciplinary Proceeding by Intentionally Failing to Comply with Rules or Orders of the Disciplinary Process*. The Respondent failed to participate in the investigation or prosecution of this matter. As such, the Hearing Panel concludes that the Respondent engaged in a bad faith obstruction of the disciplinary proceeding.

"*Vulnerability of Victims*. The Hearing Panel concludes that [J.S.], [J.T.], and [F.D.] were vulnerable victims.

"*Substantial Experience in the Practice of Law*. The Kansas Supreme Court admitted the Respondent to the practice of law on September 14, 1979. The Respondent had been practicing law for nearly 20 years. Thus, the Hearing Panel concludes that the Respondent had substantial experience in the practice of law.

"*Indifference to Making Restitution*. To date, the Respondent has not refunded the unearned fees.

"Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found no mitigating circumstances present.

"In addition to the above-cited factors, the Hearing Panel has thoroughly examined and considered the following Standards:

'4.11 Disbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client.

'4.41 Disbarment is generally appropriate when:

. . . .

(b) a lawyer knowingly fails to perform services for a client and causes serious or potentially serious injury to a client; or

(c) a lawyer engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client.

'4.51 Disbarment is generally appropriate when a lawyer's course of conduct demonstrates that the lawyer does not understand the most fundamental legal doctrines or procedures, and the lawyer's conduct causes injury or potential injury to a client.

'8.1 Disbarment is generally appropriate when a lawyer:

. . . .

(b) has been suspended for the same or similar misconduct, and intentionally or knowingly engages in further acts of misconduct that cause injury or potential injury to a client, the public, the legal system, or the profession.'

### "RECOMMENDATION

"The Disciplinary Administrator recommended that the Respondent be disbarred.

"Based upon the findings of fact, conclusions of law, and the Standards listed above, the Hearing Panel unanimously recommends that the Respondent be disbarred.

"Costs are assessed against the Respondent in an amount to be certified by the Office of the Disciplinary Administrator."

## DISCUSSION

The Disciplinary Administrator recommends that this court adopt the recommendation of the hearing panel that respondent be disbarred from the practice of law in this state. We note that the respondent did not provide an answer to the complaint, appear for hearing before this court, or offer an explanation for his absence, although a copy of the hearing notification was mailed to him in accordance with our rules. The notice was mailed, both by regular mail and by certified mail, on September 15, 2009, to respondent's last address on file with the Clerk of the Appellate Courts; both were returned, marked "not deliverable as addressed, unable to forward." Because respondent had filed with the Clerk of the Appellate Courts a responsive pleading in a prior disciplinary action listing an address in Colorado, the same notice in this case was mailed September 15, 2009, to the Colorado address; it also was returned, marked "returned to sender, unclaimed, unable to forward, return to sender." The respondent was properly notified of this proceeding, and this court has jurisdiction to proceed.

In a disciplinary proceeding, this court considers the evidence, the findings of the hearing panel, and arguments of the Disciplinary Administrator and determines whether violations of KRPC exist and, if they do, what discipline should be imposed. Attorney misconduct must be established by substantial, clear, convincing, and satisfactory evidence. *In re Landrith*, 280 Kan. 619, 636, 124 P.3d 467 (2005); Supreme Court Rule 211(f) (2009 Kan. Ct. R. Annot. 321). When a respondent does not file exceptions to the

hearing panel's report, the report is deemed admitted under Supreme Court Rule 212(c) and (d) (2009 Kan. Ct. R. Annot. 337).

In this case, Lober filed no exceptions to the hearing panel's report. We conclude there is clear and convincing evidence that Lober violated KRPC 1.1, 1.3, 1.4(a), 1.5, 1.15(b), 8.1(b), 8.4(a) and (d) as well as Supreme Court Rules 207(b) and 211(b), and we adopt the conclusions of the hearing panel.

Disbarment is deemed appropriate according to the following ABA Standards when: "a lawyer knowingly converts client property and causes injury or potential injury to a client," Standard 4.11; "a lawyer knowingly fails to perform services for a client and causes serious or potentially serious injury to a client; or . . . engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client," Standard 4.41; or "a lawyer's course of conduct demonstrates that the lawyer does not understand the most fundamental legal doctrines or procedures, and the lawyer's conduct causes injury or potential injury to a client," Standard 4.51. The hearing panel found that each of these Standards apply in this matter, and this court, in turn, must reach the same conclusion.

Standard 8.1 provides:

"Disbarment is generally appropriate when a lawyer:

'(a) Intentionally or knowingly violates the terms of a prior disciplinary order and such violation causes injury or potential injury to a client, the public, the legal system, or the profession; or

'(b) has been suspended for the same or similar misconduct, and intentionally or knowingly engages in further acts of misconduct that cause injury or potential injury to a client, the public, the legal system, or the profession.' "

Standard 8.1 applies in this case because a 1-year suspension from the practice of law was imposed in *In re Lober*, 276 Kan. 633, 78 P.3d 442 (2003). In *In re Lober*, 288 Kan. 498, 204 P.3d 610 (2009), this court indefinitely suspended Lober from the practice of law, although the actions that led to the complaints currently before this court did not occur subsequent to that suspension. In addition to these cases, there were four complaints previously con-

sidered by the Disciplinary Administrator; the earliest was filed in 1994. Therefore, the hearing panel made the findings suggested by Standard 8.1. See *In re Comfort*, 284 Kan. 183, 207, 159 P.3d 1011 (2007) (every potentially applicable ABA Standard need not be discussed by hearing panel or court; ABA Standards serve only as guidelines to assist courts in selecting appropriate and uniform discipline).

We conclude that the appropriate discipline is disbarment.

### CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that the respondent, Terence A. Lober, be and he is hereby disbarred from the practice of law in the state of Kansas effective immediately, in accordance with Supreme Court Rule 203(a)(1) (2009 Kan. Ct. R. Annot. 272) for his violations of the Kansas Rules of Professional Conduct.

IT IS FURTHER ORDERED that the Clerk of the Appellate Courts strike the name of Terence A. Lober from the roll of attorneys licensed to practice law in Kansas.

IT IS FURTHER ORDERED that Terence A. Lober comply with Supreme Court Rule 218 (2009 Kan. Ct. R. Annot. 361).

IT IS FURTHER ORDERED that this order be published in the official Kansas Reports and that the costs of this action be assessed to respondent.

PATRICIA MACKE DICK, District Judge, assigned.