No. 96,581

In the Matter of MICHAEL F. BRUNTON, *Respondent*.

144 P.3d 606

Opinion filed October 27, 2006.

*Stanton A. Hazlett*, disciplinary administrator, argued the cause and was on the formal complaint for petitioner.

*John J. Ambrosio*, John J. Ambrosio, Chartered, of Topeka, argued the cause for respondent, and *Michael F. Brunton*, argued the cause pro se.

*Per Curiam*: This is an original uncontested proceeding in discipline filed by the office of the Disciplinary Administrator against respondent, Michael F. Brunton, an attorney licensed to practice law in Kansas since 1981. Respondent's last registration address with the Clerk of the Appellate Courts of Kansas is in Topeka, Kansas.

The formal complaint charged respondent in Count I with violating Kansas Rules of Professional Conduct (KRPC) 3.1 (2005 Kan. Ct. R. Annot. 455) (meritorious claims and contentions) and KRPC 8.4(d) (2005 Kan. Ct. R. Annot. 504) (engaging in conduct prejudicial to administration of justice) and in Count II with violating 8.4(b) (2005 Kan. Ct. R. Annot. 504) (engaging in criminal conduct involving dishonesty).

Respondent appeared in person and through counsel at his March 9, 2006, disciplinary hearing. He stipulated to the violations.

"In a disciplinary proceeding, this court considers the evidence, the findings of the disciplinary panel, and the arguments of the parties and determines whether violations of KRPC exist and, if they do, what discipline should be imposed. [Citation omitted.] Any attorney misconduct must be established by substantial, clear, convincing, and satisfactory evidence. [Citation omitted.]

"This court views the findings of fact, conclusions of law, and recommendations made by the disciplinary panel as advisory, but gives the final hearing report the same dignity as a special verdict by a jury or the findings of a trial court. Thus, the disciplinary panel's report will be adopted where amply sustained by the evidence, but not where it is against the clear weight of the evidence. [Citations omitted.]" *In re Lober*, 276 Kan. 633, 636-37, 78 P.3d 442 (2003).

The hearing panel made the following findings of fact regarding the two incidents that formed the basis for the complaint.

### Representation of Janet L. Fisher

The respondent agreed to represent Janet L. Fisher in her Chapter 13 bankruptcy case. Before hiring respondent, Fisher had been convicted of embezzlement from Performance Tire and Wheel (PT&W), her former employer. As a result of the criminal case, Fisher was required to pay $40,000 in restitution.

On September 5, 2001, respondent filed a Chapter 13 bankruptcy case on Fisher's behalf. In her plan, Fisher proposed that $5,000 of the restitution be paid and the remainder discharged.

Title 11, Chapter 13, § 1328(a)(3) of the Bankruptcy Code (2000) provides that a bankruptcy court will grant a discharge of debt provided by a plan, "except any debt . . . for restitution, or a criminal fine, included in a sentence on the debtor's conviction of a crime." The respondent included Fisher's request to discharge all but $5,000 of the restitution in spite of this clear prohibition in the Code.

Respondent did not list PT&W as a creditor in the plan. Instead of sending notice to PT&W, the respondent sent notice to "SN County District Court." As a result, PT&W did not receive notice of the plan and was not made aware of the filing of the bankruptcy.

On November 28, 2001, Fisher's plan was confirmed. PT&W learned from another source of Fisher's bankruptcy case, and PT&W's president, Jerry Glasgow, called respondent about Fisher's restitution obligation. Respondent did not amend the bankruptcy plan; he instead informed Glasgow that Glasgow needed to hire an attorney to resolve the matter.

In April 2002, Glasgow did so. PT&W's attorney entered her appearance and wrote to respondent, requesting that he correct the plan. Respondent refused. PT&W then filed a complaint to revoke confirmation of Fisher's plan. Respondent filed an answer in which he stated that he provided adequate notice to PT&W.

The bankruptcy court subsequently ordered Fisher's plan amended to strike all language purporting to discharge the criminal restitution.

Following the court's order, PT&W filed a motion for sanctions against respondent for attempting to discharge a large portion of debt not dischargeable and failing to remedy the situation. The bankruptcy court granted the motion for sanctions, concluding that respondent had no reasonable basis to include the discharge provision in the plan and that his attempt to discharge a nondischargeable debt was made in bad faith.

Upon respondent's Motion for Reconsideration, the bankruptcy court entered an order granting the motion in part and denying it in part. The court concluded:

"[PT&W's attorney] attempted, by sending letters and making telephone calls, to persuade [Respondent] to undo what should never have been done in the first place (i.e., place the restitution discharge provision in the plan), but [Respondent] refused to simply remove the offending language, which by then even he admitted was incorrect. [Citation omitted.] Instead, he held hostage the admittedly required plan revision, in exchange for PT&W's agreement to forgive its request for what was, at that time, a very modest attorney fee. This attempt to condition his compliance with the Bankruptcy Code on the forgiveness of attorney fees thus compounded his original problem, and that proved to be true over the next many months."

In sum, the court determined that "[the Respondent's] failure to file a one sentence amendment to the plan, stating that the plan would not discharge the restitution obligation, resulted in considerable attorney fees for PT&W, and unnecessary litigation for the court." The court ordered the respondent to pay sanctions in the amount of $1,000 pursuant to the Bankruptcy Code "and under this Court's inherent power to sanction a party who has acted in bad faith or otherwise unreasonably and vexatiously multiplied the proceedings."

Respondent paid the sanctions.

### Failure to File Income Tax Returns

On April 14, 2005, in the United States District Court for the District of Kansas, the federal government charged the respondent with willfully failing to file income tax returns for 1998, 1999, and 2000. On August 1, 2005, respondent entered a plea of guilty to one count of willfully failing to file an income tax return. As part of his plea, respondent admitted that he knew he was required to

file tax returns; that he knowingly failed to file; that in the 1980s he had previously failed to file returns; and that this earlier failure had been handled civilly by the Internal Revenue Service.

At the time of his plea, respondent owed the federal government more than $100,000 in unpaid taxes. The district court sentenced respondent to 10 months of home detention, 150 days in a halfway house, and 5 years' probation. As of the date of the hearing panel's final report, respondent was still on home detention, had served a portion of the 150 days in the halfway house on weekends, and had filed his 2005 tax return. He continued to owe approximately $80,000 in taxes, interest, and penalties.

### Panel's Conclusions of Law

Respondent stipulated to violations of KRPC 3.1 and KRPC 8.4(b) and (d). The hearing panel arrived at the following conclusions of law.

KRPC 3.1 requires in pertinent part that "[a] lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law." 2005 Kan. Ct. R. Annot. 455. Respondent violated KRPC 3.1 by failing to provide proper notice to PT&W in Fisher's bankruptcy case; there was no basis that was not frivolous for this failure.

KRPC 8.4(b) states in pertinent part that "[i]t is professional misconduct for a lawyer to . . . (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects." 2005 Kan. Ct. R. Annot. 504. In this case, the respondent's criminal conduct in wilfully failing to file his income taxes reflect directly on the respondent's honesty and trustworthiness in violation of KRPC 8.4(b).

KRPC 8.4(d) states in pertinent part that "[i]t is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice." 2005 Kan. Ct. R. Annot. 504. Respondent engaged in conduct prejudicial to the administration of justice when he failed to amend the bankruptcy plan, in violation of KRPC 8.4(d).

Regarding its recommended discipline, the panel considered the following factors based on the American Bar Association's Standards for Imposing Lawyer Sanctions (1991) (Standards):

"*Duty Violated*. The Respondent violated his duty to the legal profession to maintain his personal integrity.

"*Mental State*. The Respondent knowingly violated his duty.

"*Injury*. As a result of the Respondent's misconduct, the Respondent caused actual harm to PT&W, the United States Bankruptcy Court, and the legal profession."

## The panel found the following aggravating factors:

"Dishonest or Selfish Motive. The Respondent's refusal to correct his error in the Fisher bankruptcy and his failure to file and pay his income taxes [were] was motivated by dishonesty and selfishness.

"Multiple Offenses. The Respondent violated KRPC 3.1, KRPC 8.4(b) and KRPC 8.4(d). As such, the Respondent committed multiple offenses.

"Substantial Experience in the Practice of Law. The Kansas Supreme Court admitted the Respondent to practice law in 1981. At the time the Respondent engaged in misconduct, the Respondent had been practicing law for over 20 years. Accordingly, the Hearing Panel concludes that the Respondent had substantial experience in the practice of law at the time he engaged in the misconduct.

"Illegal conduct. The Respondent engaged in illegal conduct when he failed to file his income tax returns. As a result, the Respondent was convicted of the crime. Thus the Hearing Panel concludes that the Respondent engaged in illegal conduct."

## The panel also considered the following mitigating factors:

"Personal or Emotional Problems if Such Misfortunes have Contributed to a Violation of the Kansas Rules of Professional Conduct. The Respondent and his family have suffered personal problems during the past several years—the Respondent has had medical problems, the Respondent has abused illegal drugs, the Respondent suffers from a mild form of depression, and the Respondent's daughter has addiction and mental health issues. The personal problems may have contributed to the Respondent's misconduct.

"Previous Good Character and Reputation in the Community Including any Letters from Clients, Friends, and Lawyers in Support of the Character and General Reputation of the Attorney. The Respondent is an active and productive member of the bar in Topeka, Kansas. He enjoys the respect of his peers and clients and generally possesses a good character and reputation as evidenced by several letters received by the Hearing Panel."

As mitigating factors, the panel also considered the previous imposition of other penalties. Respondent had already paid sanctions

imposed by the bankruptcy court. Further, he had expressed genuine remorse at the panel hearing.

The panel also noted that respondent presented evidence he suffered from a mental disability. The panel concluded, however, that this evidence was not mitigating in this case because respondent did not establish that (1) the disability caused the misconduct; (2) he had enjoyed a meaningful and sustained period of successful rehabilitation; and (3) his recovery arrested the misconduct, making recurrence unlikely.

The Disciplinary Administrator recommended 6 months' suspension for respondent's disciplinary violations. Counsel for respondent recommended that respondent be censured. The panel considered Standard 5.12, which states:

"Suspension is generally appropriate when a lawyer knowingly engages in criminal conduct which does not contain the elements listed in Standard 5.11 and that seriously adversely reflects on the lawyer's fitness to practice."

The panel also considered Standard 5.13, which states:

"Reprimand is generally appropriate when a lawyer knowingly engages in any other conduct that involves dishonesty, fraud, deceit, or misrepresentation and that adversely reflects on the lawyer's fitness to practice law."

The panel noted that while respondent's conduct injured PT&W and the bankruptcy court, it did not cause harm to his client. In fact, a trustee of the bankruptcy court testified that the ramifications of suspending respondent would be devastating to those of his clients with ongoing cases, but the panel said it was not permitted to base its recommendation on what would happen to those open cases.

Considering only the misconduct of the respondent, the Kansas Supreme Court Rules, the case law, and the ABA Standards, the panel ultimately unanimously recommended that respondent be censured by the Kansas Supreme Court, that the censure be published, and that the respondent also be ordered to comply with the following conditions:

"1. Within 60 days of the date of this report, the Respondent shall find and retain the services of a mental health treatment professional that is acceptable to William L. Albott, PhD [the psychologist who conducted an evaluation of Re-

spondent and testified at the disciplinary hearing], the Disciplinary Administrator, and [Respondent's] federal probation officer. The mental health treatment professional must be willing to comply with the conditions set forth herein. Further, the Respondent shall begin and continue weekly sessions with the mental health treatment professional as approved by his federal probation officer.

"2. On a quarterly basis, beginning July 1, 2006, the mental health treatment professional must forward written reports to the Disciplinary Administrator. The reports shall state (1) the components of the current treatment plan, (2) the Respondent's compliance with the current treatment plan, (3) the progress made by the Respondent during the quarter, and (4) the long-term plan for treatment for the Respondent.

"3. Within 30 days of the date of this report, the Respondent shall provide written evidence to the Disciplinary Administrator to establish that he has paid the 2005 income taxes owing.

"4. On or before September 1, 2006, the Respondent shall provide written evidence to the Disciplinary Administrator to establish that he has paid the balance of the taxes, interest, and penalties owing for tax years 1998, 1999, and 2000.

"5. On or before July 15, 2006, October 15, 2006, January 15, 2007, and April 15, 2007, the Respondent shall provide written evidence to the Disciplinary Administrator that he has paid the quarterly estimated income taxes.

"6. At the discretion of the Disciplinary Administrator, the Respondent shall submit to random urinalysis testing to establish whether he has resumed his use of illegal substances. A positive test result, showing the presence of any illegal drugs, shall be deemed a violation of these conditions."

The panel recommended that, in the event Respondent failed to comply with any of these conditions, he be ordered to show cause why he should not be held in contempt of the Kansas Supreme Court. Further, upon a finding that respondent violated one or more of the conditions, the panel recommended that respondent be suspended from the practice of law for an indefinite period time. The panel assessed the costs of the disciplinary proceedings against the respondent.

## Analysis

While the panel's recommended discipline is advisory only and it is the responsibility of this court to examine the evidence and determine for itself the discipline to be imposed, *In re Gribble,* 261 Kan. 985, 986, 933 P.2d 672 (1997), the hearing panel's report is due the same dignity as a special verdict by a jury or the findings of a trial court. Thus the disciplinary panel's report will be adopted

where amply sustained by the evidence, but not where it is against the clear weight of the evidence. *In re Lober*, 276 Kan. 633, 636-37, 78 P.3d 442 (2003).

Here, there is no dispute as to the facts. Respondent stipulated to his violations of KRPC 3.1 and 8.4(b) and (d). Respondent violated his duty to the public to maintain his personal integrity. He did so knowingly. There was actual injury caused by respondent's misconduct, although there was no injury to respondent's client. Respondent paid the sanctions imposed by the bankruptcy court for his misconduct. There are several mitigating factors, including the high regard in which respondent is held by his peers and his clients; the personal problems respondent has experienced, including substance abuse and mild depression; and the genuine remorse respondent expressed over his conduct.

We adopt and affirm the findings of fact made and the conclusions of law drawn by the hearing panel.

Since the panel's report, respondent has taken steps to comply with the conditions suggested. He has retained the services of Dr. William Albott, who has provided a report as required by the panel; he has provided written evidence to the Disciplinary Administrator establishing that he has paid his 2005 federal and state income taxes; he has furnished the Disciplinary Administrator with information regarding his quarterly federal tax payments and has paid the first-and second-quarter taxes for 2006; he has furnished the Disciplinary Administrator with evidence that he has paid $57,000 in penalties relating to his criminal case, and, although he has appealed the fraud penalties assessed, he has secured a line of credit sufficient to pay all of the penalties; and he has agreed to comply with the terms and conditions of a monitoring program for substance abuse recovery. At oral argument before this court, respondent's counsel stated that respondent is receiving substance abuse help from the Kansas Impaired Lawyers Assistance Program.

The panel's suggestion of conditions and respondent's positive response to them in the time between issuance of the hearing report and oral argument before this court make this an unusual case. A majority of the court is satisfied that, if respondent continues to comply with the panel's conditions and continues to comply with

Kansas Impaired Lawyers Assistance Program requirements, the public will be adequately protected. The majority therefore agrees that immediate imposition of a disciplinary sanction other than continuance of the conditions is not necessary. Rather, imposition of any other disciplinary sanction shall be suspended for 2 years, provided respondent continues to fully comply with the following:

1. As approved by his federal probation officer, respondent shall continue weekly sessions with William L. Albott, PhD.
2. Respondent shall ensure that Dr. Albott continues to forward written reports on a quarterly basis to the Disciplinary Administrator. The reports shall state (1) the components of the current treatment plan, (2) the respondent's compliance with the current treatment plan, (3) the progress made by the respondent during the quarter, and (4) the long-term plan for treatment for the respondent.
3. The respondent shall provide written evidence to the Disciplinary Administrator to establish that he has paid any remaining balance assessed on the taxes, interest, and penalties owing for 1998, 1999, and 2000. To the degree any portion of the amount owed remains in dispute, respondent shall provide quarterly written reports to inform the Disciplinary Administrator of efforts to settle the dispute and any success or lack of success in those efforts.
4. On or before October 15, 2006, and every 4 months thereafter, respondent shall provide written evidence to the Disciplinary Administrator that he has paid his quarterly estimated income taxes.
5. At the discretion of the Disciplinary Administrator, the respondent shall submit to random urinalysis testing to confirm that he has not resumed his use of illegal substances. Respondent shall continue to receive addiction treatment and counseling through the Kansas Impaired Lawyers Assistance Program, including but not limited to submission to any additional required testing.

Should respondent violate any of these conditions or have a positive drug test, the Disciplinary Administrator shall forthwith notify

this court by Motion for Order to Show Cause why a disciplinary sanction should not be imposed. Should respondent successfully comply with all of these conditions for 2 years from the date of the filing of this opinion, he shall forthwith notify this court and may seek release from the conditions.

A minority of this court would impose a disciplinary sanction of 6-months' suspension immediately.

IT IS THEREFORE ORDERED that Michael F. Brunton be and he is hereby subject to the conditions listed above.

IT IS FURTHER ORDERED that this opinion shall be published in the official Kansas Reports and that the costs herein be assessed to the respondent.

DAVIS, J., NUSS, J., and ROSEN, J., not participating.

MARQUARDT, J., and HILL, J., assigned.