No. 97,220

In the Matter of PAUL ARABIA, *Respondent.*

(156 P.3d 652)

Opinion filed April 27, 2007.

*Alexander M. Walczak,* deputy disciplinary administrator, argued the cause, and *Stanton A. Hazlett,* disciplinary administrator, was with him on the formal complaint for petitioner.

No appearance by the respondent.

*Per Curiam:* This is an original uncontested proceeding in discipline filed by the Disciplinary Administrator against the respondent, Paul Arabia, an attorney admitted to the practice of law in Kansas in 1966. The respondent's last registration address filed with the Clerk of the Appellate Courts of Kansas is in Wichita, Kansas.

Prior to the filing of the formal complaint, but after being notified by the office of the Disciplinary Administrator that a formal complaint would be forthcoming, the respondent sent a letter to the Disciplinary Administrator's office stating that: (1) he had retired; (2) he had no present forwarding address; and (3) he would be sailing for a period of time before taking up residence in Mexico.

A hearing was held before a panel of the Kansas Board for Discipline of Attorneys on June 20, 2006. The respondent failed to appear. In its final hearing report, the panel concluded respondent had violated Kansas Rules of Professional Conduct (KRPC) 3.3(d) (2006 Kan. Ct. R. Annot. 467) (duty of candor in ex parte proceeding); 8.4(a) (2006 Kan. Ct. R. Annot. 510) (knowingly assisting or inducing another to violate the rules of professional conduct); 8.4(b) (engaging in criminal conduct involving dishonesty); 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation); 8.4(d) (engaging in conduct prejudicial to administration of justice); and 8.4(g) (engaging in conduct adversely reflecting on fitness to practice law). The hearing panel unanimously recommended that the respondent be disbarred from the practice

of law in the state of Kansas. Respondent filed no exceptions and did not appear at the hearing before us.

The panel's findings of fact, conclusions of law, and recommendation for discipline are reproduced in part as follows:

### "FINDINGS OF FACT

. . . .

"2. In 1998, the Respondent leased an office in his building [in Wichita] to Michael E. Lazzo. The Respondent and Mr. Lazzo were not partners nor were they associated in the practice of law.

"3. In 1998, the Respondent became acquainted with Reynaldo Charles. Mr. Charles eventually worked as a legal assistant in the Respondent's law office. Additionally, the Respondent employed Mr. Charles to do household repairs on the Respondent 's homes in Wichita, Kansas, and in Mexico.

"4. In 1998, the Respondent drafted a change of name petition in behalf of Mr. Charles. However, the petition was not filed in court.

"5. In 2000, officials in Adams County, Colorado, charged Mr. Charles with sexual assault on a child while in a position of trust, a class III felony, and sexual assault on a child, a class IV felony. The Respondent conferred with Mr. Charles' public defender, Mandarin Bowers, regarding Mr. Charles' case. Thereafter, the Respondent recommended to Mr. Charles that he accept the offer of a plea agreement and enter a plea of guilty to attempted sexual assault on a child, a class V felony. [Footnote: In addition to the 2000 criminal case, Mr. Charles had previously been convicted of a misdemeanor and four felonies—third degree assault, sexual assault of a child while in a position of trust, sexual offense against a child (fondling), incest with a minor, and sexual assault pattern of abuse.]

"6. On September 1, 2000, Mr. Charles entered a plea of guilty to attempted sexual assault on a child. Following his plea, Mr. Charles was free on bond. The Court scheduled Mr. Charles' sentencing hearing for November 29, 2000.

"7. Following Mr. Charles' plea hearing, on October 16, 2000, the Respondent made an affidavit."

The affidavit is lengthy and its full inclusion herein is unnecessary. Apparently, the purpose of the affidavit was to support a claim by Charles that he should be allowed to withdraw his guilty plea. The affidavit states that Charles had authorized the respondent to discuss his Colorado case and a possible no contest plea with Bowers. The affidavit then goes into great detail concerning an August 28, 2000, telephone conversation respondent had with Bowers. *Inter alia*, Bowers stated that the case against Charles was strong and that the charge exposed him to a lengthy prison sentence wherein the reduced plea bargained-for charge, attempted sexual assault of

a child, greatly shortened his possible prison time. Respondent states Bowers did not tell him about the reporting requirements which might preclude a return to Kansas and restrictions in Charles' living conditions, including not being able to be around children. A great many more details were discussed in the same conversation. Respondent ends up swearing that if he had known all of these things, he would not have recommended that Charles plead guilty. It is very clear from the affidavit that respondent was extremely familiar with the charge against Charles and all ramifications of his plea on August 28, 2000, and on October 16, 2000. As the panel noted: "Pursuant to the affidavit, the Respondent was aware of Mr. Charles' plea and the requirements and consequences of the conviction." The panel's findings continue:

"8.   Prior to the sentencing hearing, Mr. Charles left the state of Colorado and returned to Wichita, Kansas, and to the employment of the Respondent. Mr. Charles failed to appear at the sentencing hearing and the Court issued a warrant for Mr. Charles' arrest. Mr. Charles remained a fugitive for an extended period of time.

"9.   In April, 2001, the Respondent prepared and Mr. Charles signed a statement that the pending criminal matters in Colorado had been resolved to Mr. Charles' satisfaction.

"10.   In May, 2002, the Respondent prepared a second petition for change of name for Mr. Charles. Rather than list his name as attorney of record, the Respondent prepared the documents for Mr. Lazzo's signature. The petition provided that Mr. Charles' name would be changed to Jose Javier Soto. Mr. Charles executed an affidavit in support of the petition. The Respondent provided the prepared documents to Mr. Lazzo and asked that he complete the filing. The Respondent explained to Mr. Lazzo that Mr. Charles wanted to adopt his grandmother's name.

"11.   At the time that the Respondent asked Mr. Lazzo to complete the filing of the change name, Mr. Lazzo knew that Mr. Charles had previously been facing criminal charges involving allegations of child sexual abuse. Mr. Lazzo did not verify that Mr. Charles' criminal case had been resolved. Mr. Lazzo assumed that Mr. Charles' criminal case had been resolved because Mr. Charles had returned to Kansas.

"12.   On May 28, 2002, Mr. Lazzo filed the name change case in behalf of Mr. Charles, in the Sedgwick County District Court, case number 02C-1839. [Footnote: At the time Mr. Lazzo filed the name change case, the Adams County, Colorado, warrant for Mr. Charles' arrest remained pending.] The petition and the affidavit filed to change Mr. Charles' name included the following statement: 'that the change of name requested, when granted by the court, will not hinder,

delay, or defraud Petitioner's creditors or defeat other legal obligations.' The pleadings filed to change Mr. Charles' name did not include any reference to the outstanding warrant or criminal case.

"13. On July 3, 2002, Mr. Lazzo personally provided the Honorable Richard T. Ballinger of the Sedgwick County District Court, a journal entry relating to Mr. Charles' name change case. At the time he provided the journal entry to Judge Ballinger, Mr. Lazzo did not inform the Court of Mr. Charles' criminal case in Colorado. In relying on the representations contained in the petition, affidavit, and journal entry, the Court granted Mr. Charles' petition and changed his name to Jose Javier Soto.

"14. Mr. Lazzo did not conduct any investigation into the facts included in the petition. He never discussed the matter with his client, Mr. Charles, nor did he discuss the contents of the petition, affidavit, or journal entry with Mr. Charles or the Respondent. Mr. Lazzo had no contact with Mr. Charles regarding the name change.

"15. Brent Bowler became acquainted with Mr. Charles, a.k.a. Mr. Soto, and the Respondent.

"16. On January 27, 2004, Mr. Bowler became unconscious while in the company of Mr. Charles, a.k.a. Mr. Soto, and with Christopher Cross, at 2135 South Ida, Wichita, Kansas. Rather than immediately calling for medical assistance, Mr. Charles, a.k.a. Mr. Soto, and Mr. Cross attempted to revive Mr. Bowler by putting him into the shower. When Mr. Bowler did not respond to the attempts to revive him, Mr. Charles, a.k.a. Mr. Soto, and Mr. Cross telephoned the Respondent twice and then took Mr. Bowler to the St. Joseph Hospital in Wichita, Kansas. Mr. Charles, a.k.a. Mr. Soto, identified himself to hospital officials as Mr. Soto.

"17. Mr. Bowler was immediately taken to the intensive care unit. Mr. Bowler suffered from a brain bleed. Because trauma is one cause of a brain bleed, the police were called. Detective Timothy Relph of the Wichita Police Department was assigned to investigate Mr. Bowler's injury. Because it had been reported that Mr. Bowler had become unconscious at the address on South Ida, Detective Relph wanted to go to that address and process the scene. Detective Relph asked Mr. Soto if they could go process the scene at South Ida. Mr. Soto denied Detective Relph access to the residence because he did not own the residence. Mr. Soto referred Detective Relph to the Respondent.

"18. Detective Relph contacted the Respondent. The Respondent also denied Detective Relph access to the residence. The Respondent reasoned that because he did not own the residence, and because he could not contact the owner of the property, he could not give consent to search the residence.

"19. On January 30, 2004, Mr. Bowler died.

"20. Carol Bowler, Mr. Bowler's mother, contacted Detective Relph regarding her son's death. Mrs. Bowler informed Detective Relph that Mr. Bowler had contact through the years with a man she believed had molested him. The man's name was Reynaldo Charles. Mrs. Bowler provided Detective Relph with a copy of a restraining order that she obtained in 2001 against Mr. Charles. When De-

tective Relph reviewed the order, he noted that Mr. Charles had the same date of birth as Mr. Soto.

"21.    Detective Relph discovered that Mr. Charles had three outstanding arrest warrants out of Colorado. Detective Relph obtained a photograph of Mr. Charles from law enforcement officials in Colorado.

"22.    During the course of his investigation, Detective Relph interviewed the Respondent. While interviewing him, Detective Relph showed the Respondent a photograph of Mr. Charles. The Respondent falsely told Detective Relph that he knew the man in the photograph only as Mr. Soto. When Detective Relph informed the Respondent that the photograph was of a man named Reynaldo Charles, a fugitive from Colorado, the Respondent seemed surprised. The Respondent did not inform Detective Relph that he knew the man in the photo was Mr. Charles, who changed his name to Mr. Soto, nor did the Respondent inform Detective Relph that he assisted Mr. Charles in changing his name.

"23.    The coroner concluded that Mr. Bowler died as a result of an overdose of Oxycodone.

"24.    Eventually, in June or July, 2004, Mr. Charles, a.k.a. Mr. Soto, was arrested on the outstanding warrants from Colorado.

"25.    After Mr. Charles', a.k.a. Mr. Soto's, apprehension, Michael J. Bueno, an investigator with the Adams County District Attorney's office, interviewed the Respondent. During the course of the interview, the Respondent provided false information to Mr. Bueno. Specifically, Mr. Bueno asked the Respondent whether he provided Mr. Charles, a.k.a. Mr. Soto, with legal advice regarding the 2000 criminal case in Adams County, Colorado. The Respondent told Mr. Bueno that he did not provide Mr. Charles, a.k.a. Mr. Soto, with legal advice. However, according to the Respondent's affidavit, quoted at ¶ 7 above, the Respondent provided Mr. Charles, a.k.a. Mr. Soto, with legal advice regarding the 2000 criminal case in Adams County, Colorado.

"26.    On January 26, 2005, Catherine Mabrey, Mr. Charles' ex-wife, filed a complaint with the Disciplinary Administrator's office. David Rapp, Chairman of the Wichita Ethics and Grievance Committee assigned John Seeber to conduct an investigation.

"27.    On May 31, 2005, the Respondent forwarded a response to Ms. Mabrey's complaint to the Disciplinary Administrator's office. In his response the Respondent included the following false statements:

. . . .

'Ms. Mabrey seems to be alleging that the name change allowed Mr. Soto to remain at large and avoid prosecution or some other legal obligation as a result of a warrant which issued out of the State of Colorado. I know of no facts which support that conclusion.

. . . .

'So far as was known to me, at the time of the initiation of the name change proceeding, Reynaldo Charles had not been charged with or convicted of any felony.

. . . .

'So far as is known to me, at the time the name change proceedings were initiated, he had not been charged with or convicted of any felony, and, of course, had we had any information from anyone that he was attempting [to] elude legal authorities (if he was), we would not have assisted him at all.

'So far as either of us knew, the issues which Mr. Charles had been facing in Colorado in December of 2001 had been resolved. Neither Mr. Lazzo nor I were directly or indirectly involved in those matters at that time.'

"28.    During the course of his investigation, Mr. Seeber took a sworn statement from the Respondent. During the sworn statement, the Respondent's testimony conflicted with the sworn statement contained in his affidavit made on October 16, 2000. The following excerpts are from the Respondent's sworn statement.

. . . .

'Q.    [By Mr. Seeber] Well, in the name change petition when you had Mr. Lazzo take that up to file it, to your knowledge, had Mr. Charles been charged with a felony as of that time?

'A. [By the Respondent] I knew that in the year 2000, someone had told me that he was charged with a crime in Colorado. I did not know whether the crime was a misdemeanor or a felony.

. . . .

'Q. So you had no information that would indicate to you that there would be any restraint of any kind or limits on his traveling anywhere he wanted anytime he wanted to?

. . . .

'A. I had no information.'

## "CONCLUSIONS OF LAW

"1.    Kan. Sup. Ct. R. 215 governs service of process in disciplinary proceedings. That rule provides, in pertinent part as follows:

'(a)    Service upon the respondent of the formal complaint in any disciplinary proceeding shall be made by the Disciplinary Administrator, either by personal service or by certified mail to the address shown on the attorney's most recent registration, or at his or her last known office address.

. . . .

'(c)    Service by mailing under subsection (a) or (b) shall be deemed complete upon mailing whether or not the same is actually received.'

In this case, the Disciplinary Administrator complied with Kan. Sup. Ct. R. 215(a) by sending a copy of the Formal Complaint and the Notice of Hearing, *via* certified United States mail, postage prepaid, to the address shown on the Respondent's most recent registration. John Stark, the Respondent's legal assistant, signed the return receipt. The Respondent reported to the Disciplinary Administrator that he would not attend the hearing because he would be sailing.

The Hearing Panel concludes that the Respondent was afforded the notice that the Kansas Supreme Court Rules require.

"2.   Based upon the findings of fact, the Hearing Panel concludes as a matter of law that the Respondent violated KRPC 3.3(d) and KRPC 8.4(d), as detailed below.

"3. KRPC 3.3(d) provides:

'In an *ex parte* proceeding, a lawyer shall inform the tribunal of all material facts known to the lawyer which will enable the tribunal to make an informed decision, whether or not the facts are adverse.'

In this case, the Respondent drafted the pleadings to change Mr. Charles' name. In doing so, he failed to inform the Court of all material facts known to him—specifically information regarding the outstanding fugitive warrant from Colorado—which would have enabled the Court to make an informed decision regarding Mr. Charles' name change. Based upon the Respondent's failure to inform the Court of material information, the Hearing Panel concludes that the Respondent violated KRPC 3.3(d).

"4.   KRPC 8.4(a) prohibits attorneys from '[v]iolat[ing] or attempt[ing] to violate the rules of professional conduct, knowingly assist[ing] or induc[ing] another to do so, or do so through the acts of another.' The Respondent violated KRPC 8.4(a) when he directed Mr. Lazzo to file the petition to change Mr. Charles' name when it did not include all material information. Therefore, the Hearing Panel concludes that the Respondent violated KRPC 8.4(a).

"5.   'It is professional misconduct for a lawyer to . . . commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects.' KRPC 8.4(b). In this case, the Respondent committed a criminal act when he provided false information to Detective Relph regarding his knowledge of Mr. Charles, a.k.a Mr. Soto. Accordingly, the Hearing Panel concludes that the Respondent committed a criminal act and that criminal act reflects directly on the Respondent's honesty and trustworthiness, in violation of KRPC 8.4(b).

"6.   KRPC 8.4(c) prohibits attorneys from engaging in conduct that involves dishonesty. Specifically, '[i]t is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation.' KRPC 8.4(c). The Respondent engaged in conduct that involved dishonesty when he drafted the pleadings to change Mr. Charles' name and omitted material information regarding Mr. Charles' background. Additionally, the Respondent engaged in conduct that involved dishonesty when he provided false information to Detective Relph and Mr. Bueno. As such, the Hearing Panel concludes that the Respondent violated KRPC 8.4(c).

"7. 'It is [also] professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice.' KRPC 8.4(d). In this case, the Respondent engaged in 'conduct that is prejudicial to the administration of justice' when he drafted the pleadings in Mr. Charles' name change case. Mr. Charles should never have had his name changed. Because the Respondent failed to pro-

vide adequate information to Mr. Lazzo and the Court, the Court changed Mr. Charles' name to Mr. Soto. Mr. Charles' name change impacted directly on the administration of justice. Officials from Colorado were unable to locate Mr. Charles, at least in part, because the Respondent assisted Mr. Charles in changing his name. As such, the hearing Panel concludes that the Respondent violated KRPC 8.4(d).

"8.    Finally, '[i]t is professional misconduct for a lawyer to . , . engage in any other conduct that adversely reflects on the lawyer's fitness to practice law.' KRPC 8.4(g). The Respondent's involvement in Mr. Charles' name change, the Respondent's failure to provide honest and complete information in the investigation of Mr. Bowler's death, and the Respondent's failure to provide honest and complete information during Mr. Bueno's investigation, adversely reflects on the Respondent's fitness to practice law. As such, the Hearing Panel concludes that the Respondent violated KRPC 8.4(g).

## "AMERICAN BAR ASSOCIATION
## STANDARDS FOR IMPOSING LAWYER SANCTIONS

"In making this recommendation for discipline, the Hearing Panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"*Duty Violated.* The Respondent violated his duty to the legal system to refrain from abusing legal process and the Respondent violated his duty to the legal profession to maintain his personal integrity.

"*Mental State.* The Respondent knowingly and intentionally violated his duties. Further, the Respondent failed to cooperate in the disciplinary process and refused to attend the disciplinary hearing. The Respondent's deposition testimony, taken by the disciplinary investigator, raises questions concerning the Respondent's veracity.

"*Injury.* As a result of the Respondent's misconduct, the Respondent caused actual injury to the administration of justice—assisting a fugitive in remaining at large for a period of nearly 4 years.

"*Aggravating or Mitigating Factors.* Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following aggravating factors present:

"Prior Disciplinary Offenses. The Respondent has been previously disciplined on two occasions. On March 9, 2001, the Respondent was censured by the Kansas Supreme Court for having violated KRPC 1.5. Additionally, on March 13, 2001, the Disciplinary Administrator informally admonished the Respondent for having violated KRPC 1.5, KRPC 1.16(d), KRPC 2.1, and KRPC 8.4. As such, the Hearing Panel concludes that the Respondent has prior disciplinary offenses.

"Dishonest or Selfish Motive. The Respondent's misconduct was motivated by dishonesty and selfishness. The Respondent misled the Court in Mr. Charles' name change case, the Respondent provided false information to Detective Relph, and the Respondent provided false information to Mr. Bueno. Accordingly, the Hearing Panel concludes that the Respondent's misconduct was motivated by dishonesty and selfishness.

"Substantial Experience in the Practice of Law. The Kansas Supreme Court admitted the Respondent to practice law in 1966. At the time the Respondent engaged in misconduct, the Respondent had been practicing law for over 35 years. Therefore, the Hearing Panel concludes that the Respondent had substantial experience in the practice of law at the time he engaged in the misconduct.

"Illegal Conduct. The Respondent engaged in illegal conduct by obstructing Detective Relph's investigation into Mr. Bowler's death.

"Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found no mitigating circumstances present.

"In addition to the above-cited factors, the Hearing Panel has thoroughly examined and considered the following Standards:

'Disbarment is generally appropriate when:

(a)    a lawyer engages in serious criminal conduct a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft; or the sale, distribution, or importation of controlled substances; or the intentional killing of another; or an attempt to conspiracy or solicitation of another to commit any of these offenses; or

(b)    a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice.' Standard 5.11

'Disbarment is generally appropriate when a lawyer, with the intent to deceive the court, makes a false statement, submits a false document, or improperly withholds material information, and causes a serious or potentially serious injury to a party, or causes a significant or potentially significant adverse effect on the legal proceeding.' Standard 6.11

### "RECOMMENDATION

"The Deputy Disciplinary Administrator recommended that the Respondent be disbarred.

"Based upon the findings of fact, conclusions of law, the Standards listed above, and the Deputy Disciplinary Administrator's recommendation, the Hearing Panel unanimously recommends that the Respondent be disbarred from the practice of law in the state of Kansas.

"Costs are assessed against the Respondent in an amount to be certified by the Office of the Disciplinary Administrator."

## DISCUSSION

In a disciplinary proceeding, this court considers the evidence, the findings of the disciplinary panel, and the arguments of the parties and determines whether violations of KRPC exist and, if they do, what discipline should be imposed. Attorney misconduct must be established by substantial, clear, convincing, and satisfactory evidence. *In re Lober*, 276 Kan. 633, 636, 78 P.3d 442 (2003); see also Supreme Court Rule 211(f) (2006 Kan. Ct. R. Annot. 284) (misconduct to be established by clear and convincing evidence).

The respondent filed a statement with the Clerk of the Appellate Courts stating he does not take exception to the panel's final report. Therefore, the hearing panel's final report is deemed admitted. Supreme Court Rule 212(c) (2006 Kan. Ct. R. Annot. 295).

We conclude the panel's findings of fact are supported by clear and convincing evidence and support the panel's conclusions of law, and we adopt the panel's findings and conclusions.

With respect to the discipline to be imposed, the panel's recommendation that the respondent be disbarred from the practice of law in the state of Kansas is advisory only and shall not prevent the court from imposing a different discipline. Rule 212(f) (2006 Kan. Ct. R. Annot. 295).

It should be noted the involvement of attorney Michael E. Lazzo in the Reynaldo Charles' name change proceeding was the subject of its own disciplinary proceeding. We accepted the panel's recommended discipline therein of published censure. *In re Lazzo*, 283 Kan. 167, 150 P.3d 887 (2007).

Lazzo's involvement was far less egregious and, as the panel found, was the result of negligence rather than intentional wrongdoing.

We have no hesitancy in agreeing with the panel and the Deputy Disciplinary Administrator that disbarment is the appropriate discipline to be imposed upon Paul Arabia. His multiple violations of the Kansas Rules of Professional Conduct and established lack of integrity constitute a disgrace to the legal profession.

IT IS THEREFORE ORDERED that the respondent, Paul Arabia, be and he is hereby disbarred from the practice of law in the state of Kansas in accordance with Supreme Court Rule 203(a)(1) (2006 Kan. Ct. R. Annot. 243) for his violations of the Kansas Rules of Professional Conduct.

IT IS FURTHER ORDERED that the Clerk of the Appellate Courts strike the name of Paul Arabia from the roll of attorneys licensed to practice law in Kansas.

IT IS FURTHER ORDERED that Paul Arabia comply with Supreme Court Rule 218 (2006 Kan. Ct. R. Annot. 314).

IT IS FURTHER ORDERED that this order be published in the official Kansas Reports and that the costs of this action be assessed to respondent.