No. 98,057

In the Matter of JAMES LEE DANIELS, *Respondent.*
(159 P.3d 995)

Opinion filed June 8, 2007.

*Alexander M. Walczak,* deputy disciplinary administrator, argued the cause, and *Stanton A. Hazlett,* disciplinary administrator, was with him on the formal complaint for petitioner.

*John J. Ambrosio,* of Topeka, argued the cause for respondent, and *James Lee Daniels,* respondent, argued the cause pro se.

*Per Curiam:* This is an original proceeding in discipline filed by the Disciplinary Administrator against respondent, James Lee Daniels, an attorney admitted to the practice of law in Kansas on October 1, 1993. Respondent is also admitted to practice law in the state of Missouri. The respondent's last registration address filed with the Clerk of the Appellate Courts of Kansas is in Kansas City, Missouri.

The charges in this case arose out of the respondent's representation of Tina Wakes regarding the December 29, 1999, death of her 16-year-old daughter, Ashley Page, who was struck and killed in a crosswalk by an off-duty Topeka police officer. Ms. Wakes retained respondent on August 5, 2001, to represent her in a suit against the City of Topeka. The respondent did not file suit against the city until March 31, 2003, about 15 months after the 2-year statute of limitations had expired. After respondent failed to file a response to the city's motion to dismiss on the basis of the statute of limitations, the motion was granted, and the case was dismissed with prejudice.

A hearing was held before a panel of the Kansas Board for Discipline of Attorneys on October 12, 2006. The respondent appeared in person and with his attorney. At the hearing, the respondent admitted all of the allegations of the formal complaint and the supplement to the formal complaint. Both sides presented

evidence concerning aggravating and mitigating factors to be considered with respect to the appropriate discipline to be imposed.

The hearing panel concluded that the respondent violated Kansas Rules of Professional Conduct (KRPC) as follows: KRPC 1.1 (2006 Kan. Ct. R. Annot. 358) (competence); KRPC 1.3 (2006 Kan. Ct. R. Annot. 371) (diligence); KRPC 1.4 (2006 Kan. Ct. R. Annot. 386) (communication); KRPC 1.15(b) (2006 Kan. Ct. R. Annot. 435) (safekeeping property); KRPC 1.16(d) (2006 Kan. Ct. R. Annot. 448) (terminating representation); KRPC 3.2 (2006 Kan. Ct. R. Annot. 462) (expediting litigation); KRPC 7.1 (2006 Kan. Ct. R. Annot. 498) (communications concerning lawyer's services); KRPC 8.1(b) (2006 Kan. Ct. R. Annot. 505) (disciplinary matters); KRPC 8.4(c) (2006 Kan. Ct. R. Annot. 510) (conduct involving dishonesty, fraud, deceit, or misrepresentation). Additionally, respondent was held to have violated Kansas Supreme Court Rule 207(b) (2006 Kan. Ct. R. Annot. 268) (duty to provide information) and Kansas Supreme Court Rule 211(b) (2006 Kan. Ct. R. Annot. 284) (formal hearings). The hearing panel unanimously recommended that the respondent be suspended from the practice of law in the state of Kansas for a period of 1 year. The respondent did not file exceptions to the final hearing report.

The panel's final hearing report provides, in part, as follows:

### "FINDINGS OF FACT

. . . .

"2.  On December 29, 1999, Ashley Page, a 16-year-old, was struck and killed by Conrad Unruh, an off-duty Topeka police officer, while walking in a crosswalk in Topeka, Kansas.

"3.  Ashley Page was the daughter of Tina Wakes. Ms. Wakes retained an attorney and settled her claim against Mr. Unruh's automobile insurance carrier. Ms. Wakes also sought to file suit against the city of Topeka for its handling of the investigation. The attorney who settled Ms. Wakes' claim against Mr. Unruh's automobile insurance carrier declined to represent Ms. Wakes in her suit against the city.

"4.  On August 5, 2001, Ms. Wakes retained the Respondent to represent her in her suit against the city. At the time the Respondent was retained, only four months remained on the two-year statute of limitations.

"5.  The Respondent agreed to file suit against the city alleging that city officials tried to protect the off-duty police officer by not properly administering a

valid alcohol concentration test, or in the alternative, that city officials were engaged in a cover-up to protect the off-duty police officer.

"6. On December 29, 2001, the statute of limitations expired.

[Footnote: Throughout the proceedings, the Respondent continued to argue that the case was not governed by a two-year statute of imitations. The Respondent never acknowledged that he failed to timely file the lawsuit.]

"7. On May 13, 2002, the Respondent informed Ms. Wakes that on March 18, 2002, he made a demand on the city and he would have to wait until 120 days passed or until July 19, 2002, to file a lawsuit.

"8. On March 31, 2003, the Respondent finally filed a lawsuit against the city in the United States District Court for the District of Kansas for claims of negligence and outrage.

"9. On April 25, 2003, the city filed a motion to dismiss Ms. Wakes' case with prejudice. In its motion and memorandum in support of the motion the city alleged that the Respondent failed to file the lawsuit within the two-year statute of limitations.

"10. On May 16, 2003, the Respondent requested that the Court grant him an additional 30 days to respond to the city's motion to dismiss due to the 'press of business.'

"11. On May 19, 2003, the Court granted the Respondent's motion in part and ordered the Respondent to file the response before May 23, 2003. The Respondent failed to file a response by May 23, 2003.

"12. On June 3, 2003, the Court granted the city's motion and dismissed the case filed by the Respondent in behalf of Ms. Wakes, with prejudice.

"13. After the case had been dismissed by the Court and without taking any action to protect Ms. Wakes' interests, on June 6, 2003, the Respondent wrote to Ms. Wakes. The Respondent's letter provided:

'Please find enclosed a copy of the Complaint for Damages filed in the above captioned case on March 13, 2003. The city has filed a motion to dismiss, and I have filed a motion for extension of time to respond. Once we file our response we will move forward with discovery.

'You will notice that the action is basically alleging negligence against the city for their failure to put up a more elaborate traffic control signal prior to Ashley's death. After conducting exhaustive research on the issue of the possible cover-up, I was in serious doubt to whether complicating this lawsuit with those claims would result in any advantage to our cause. I am convinced that the city did in fact protect Unruh by failing to write him a citation. However, because we were able to settle Ashley's claims against Unruh's auto insurance policy it would be difficult, if not impossible to show any damages from the cover-up.

'I look forward to bringing this matter to an equitable resolution as soon as possible. To that end, please sign and return the enclosed medical authorizations. Completions of these documents will allow me to obtain properly au-

thenticated copies of Ashley's medical records. If you have any questions about any aspect of this case, please do not hesitate to call.'
The Respondent failed to inform Ms. Wakes that the Court had already dismissed her lawsuit.

"14. More than three months after the case was dismissed, in September, 2003, the Respondent filed two motions and a response seeking permission to respond to the motion to dismiss previously granted. [Footnote: According to the records of the United States District Court for the District of Kansas, the Respondent filed *Plaintiff's Motion to File Response to Defendants' Motion to Dismiss Out of Time*, on September 14, 2003. However, the Respondent dated the motion July 13, 2003.] On September 25, 2003, the city responded to the Respondent's series of pleadings. On November 4, 2003, the Court overruled the Respondent's motions.

"15. The Respondent did not keep Ms. Wakes informed regarding the status of the case.

"16. On May 31, 2004, the Respondent again wrote to Ms. Wakes. In the letter, the Respondent stated:

'Per our conversation several days ago, this will apprise you of the current status of the above styled cause of action. We commenced litigation in March of 2003. Subsequently, the defendants filed a motion to dismiss which was granted over our objections. We subsequently filed a motion seeking to have [the] court reconsider its dismissal of the case. Our motion to reconsider was based on the fact that we had missed some deadlines because of a computer glitch. More specifically we did not get notices from the court's electronic filing system because my computer was reading them as junk mail. The electronic system was not in effect at the time this lawsuit was filed. When the new system went into effect, it caused problems and our case fell victim to its new age peculiarities.

'Nevertheless, as we also discussed, I will file still another motion to reconsider based on a different rule than the one previously filed. In reality, it is a long shot, but at this point it is one of only two options available. The second option is to make a claim with the Kansas Legislature's Joint Committee on Special Claims. As promised, we will explore that avenue as well. In the interim, please provide me with your updated telephone numbers. The beauty shop has advised that you no longer work there. I was also unable to reach you at the other number you previously provided.

'Tina, I know this has been a long, painful and difficult experience for you and your family. I am doing everything I can to bring it to a speedy and just conclusion. Please try to remain strong as we proceed through the process. As always, extend my thanks for trusting me with such an awesome task. If you have any questions, please feel free to call my cell phone at . . . .'

"17. Following the Respondent's May 31, 2004, letter, Ms. Wakes tried repeatedly to contact the Respondent. The Respondent failed to return many telephone calls. In February, 2005, Ms. Wakes spoke to the Respondent. He prom-

ised to forward documents for her to review, sign, and return in order to file a claim with the Kansas Legislature's Joint Committee on Special Claims. The Respondent failed to forward the documents as promised.

"18.    On April 21, 2005, Ms. Wakes filed a complaint with the Disciplinary Administrator regarding the Respondent.

"19.    On April 28, 2005, Mr. Walczak forwarded a copy of Ms. Wakes' complaint to the Respondent and directed that the Respondent respond to the complaint with 20 days. The Respondent failed to respond to the complaint as directed by Mr. Walczak.

"20.    Derenda J. Mitchell, an attorney, was assigned to investigate Ms. Wakes' complaint. On June 30, 2005, Ms. Mitchell called the Respondent. During the telephone conversation, the Respondent acknowledged that he had received Mr. Walczak's letter and that he would provide a response. The Respondent failed to respond to the complaint following the telephone conversation with Ms. Mitchell.

"21.    After not receiving a response from the Respondent, on July 27, 2005, Ms. Mitchell wrote to the Respondent and again requested that the Respondent respond to the complaint. Specifically, Ms. Mitchell directed the Respondent to respond to the complaint by August 10, 2005.

"22.    On August 2, 2005, the Respondent called Ms. Mitchell and requested additional time to respond to the complaint. Despite his request for additional time, the Respondent never provided a response to the complaint.

"23.    On January 9, 2006, Dorothy J. Waters, an attorney, wrote to the Respondent in behalf of Ms. Wakes. Ms. Waters sought the return of Ms. Wakes' original documents. The Respondent failed to respond to the letter and the Respondent failed to return Ms. Wakes' original documents. [Footnote: At the time of the hearing, the Respondent had not returned any items or documents to Ms. Wakes. In fact, the Respondent testified that he was unsure whether he had any personal items that belonged to Ms. Wakes. Ms. Wakes clearly testified that the Respondent had a shoe, a jacket, and a picture of her deceased daughter as well as various documents, in his possession.]

"24.    On June 28, 2006, Mr. Walczak filed a Formal Complaint. The Respondent failed to timely file a written Answer to the Formal Complaint, as required by Kan. Sup. Ct. R. 211.

"25.    On August 31, 2006, Mr. Walczak filed a Supplement to the Formal Complaint.

"26.    Finally, after retaining counsel, on September 1, 2006, the Respondent filed a written Answer to the Formal Complaint and on September 5, 2006, the Respondent filed a written Answer to the Supplement to the Formal Complaint.

"CONCLUSIONS OF LAW

"1.    Based upon the findings of fact, the Hearing Panel concludes as a matter of law that the Respondent violated KRPC 1.1, KRPC 1.3, KRPC 1.4, KRPC 1.15(b), KRPC 1.16(d), KRPC 3.2, KRPC 7.1, KRPC 8.1(b), KRPC 8.4(c), Kan. Sup. Ct. R. 207(b) and Kan. Sup. Ct. R. 211(b), as detailed below:

"2. Lawyers must provide competent representation to their clients. KRPC 1.1. 'Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.' The Respondent failed to competently represent Ms. Wakes when he failed to properly research the statute of limitations and when he failed to timely file her suit against the city. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 1.1.

"3. Attorneys must act with reasonable diligence and promptness in representing their clients. *See* KRPC 1.3. In this case, the Respondent failed to provide diligent representation to Ms. Wakes when he failed to bring suit, in behalf of Ms. Wakes, within the authorized statute of limitations. Because the Respondent failed to act with reasonable diligence and promptness in representing Ms. Wakes, the Hearing Panel concludes that the Respondent violated KRPC 1.3.

"4. KRPC 1.4(a) provides that '[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.' In this case, the Respondent violated KRPC 1.4(a) when he failed to return Ms. Wakes telephone calls, when he failed to provide her with accurate information regarding her case, when he failed to promptly inform her regarding the status of her case, and when he failed to provide her with documents in order to file a claim with the Kansas Legislature's Joint Committee on Special Claims. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 1.4(a).

"5. Lawyers are generally required to return property to their clients upon request. [KRPC 1.15(b) provides in part:]

'Upon receiving . . . other property in which a client . . . has an interest, a lawyer shall promptly notify the client . . . [A] lawyer shall promptly deliver to the client . . . any . . . other property that the client . . . is entitled to receive.'

In this case, Ms. Wakes requested that the Respondent return personal property, including documents and other things, to her. The Respondent did not return the property. As such, the Hearing Panel concludes that the Respondent violated KRPC 1.15(b).

"6. KRPC 1.16(d) provides:

'Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.'

The Respondent was repeatedly asked to return personal property to Ms. Wakes and her new counsel. The Respondent never provided the personal property to Ms. Wakes. The Hearing panel concludes that, accordingly, the Respondent violated KRPC 1.16(d).

"7.   An attorney violates KRPC 3.2 if he fails to make reasonable efforts to expedite litigation consistent with the interests of his client. In this case, the Respondent failed to expedite the suit he filed in behalf of Ms. Wakes when he failed to timely respond to the city's motion to dismiss. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 3.2.

"8.   Communication regarding a lawyer's services must be honest. KRPC 7.1 provides the requirements in this regard.

'A lawyer shall not make a false or misleading communication about the lawyer or the lawyer's services. A communication is false or misleading if it:

'(a) contains a material misrepresentation of fact or law, or omits a fact necessary to make the statement considered as a whole not materially misleading;'

. . . .

The Respondent violated KRPC 7.1 when he stated to Ms. Wakes in his June 6, 2003, letter that he had filed a response to the city's motion to dismiss and when he failed to inform her that the Court had dismissed her case. Therefore, the Hearing Panel concludes that the Respondent violated KRPC 7.1.

"9.   'It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation.' KRPC 8.4(c). The Respondent engaged in conduct that involved dishonesty when he provided false information to Ms. Wakes regarding the status of her case. As such, the Hearing Panel concludes that the Respondent violated KRPC 8.4(c).

"10.   Lawyers must cooperate in disciplinary investigations. KRPC 8.1(b) and Kan. Sup. Ct. R. 207(b) provide the requirements in this regard. 'A lawyer in connection with a . . . disciplinary matter, shall not: . . . knowingly fail to respond to a lawful demand for information from [a] . . . disciplinary authority, . . .' KRPC 8.1(c).

'It shall be the duty of each member of the bar of this state to aid the Supreme Court, the Disciplinary Board, and the Disciplinary Administrator in investigations concerning complaints of misconduct, and to communicate to the Disciplinary Administrator any information he or she may have affecting such matters.' Kan. Sup. Ct. R. 207(b).

The Respondent knew that he was required to forward a written response to the initial complaint—he had been instructed to do so in writing by the Disciplinary Administrator and by Ms. Mitchell and he acknowledged his obligation to Ms. Mitchell. Because the Respondent knowingly failed to provide a written response to the initial complaint filed by Ms. Wakes as requested by the Disciplinary Administrator and by Ms. Mitchell, the Hearing Panel concludes that the Respondent violated KRPC 8.1(b) and Kan. Sup. Ct. R. 207(b).

"11.   Kan. Sup. Ct. R. 211(b) requires attorneys to file Answers to Formal Complaints.

'The Respondent shall serve an answer upon the Disciplinary Administrator within twenty days after the service of the complaint unless such time is ex-

tended by the Disciplinary Administrator or the hearing panel.' Kan. Sup. Ct. R. 211(b).

In this case, the Respondent violated Kan. Sup. Ct. R. 211(b) by failing to file a timely written Answer to the Formal Complaint. Accordingly, the Hearing Panel concludes that the Respondent violated Kan. Sup. Ct. R. 211(b)."

### "RECOMMENDED DISCIPLINE

"In making this recommendation for discipline, the Hearing Panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"*Duty Violated.* The Respondent violated his duty to his client to provide competent and diligent representation. The Respondent also violated his duty to his client to provide adequate communication. Finally, the Respondent violated his duty to the legal profession to maintain his personal integrity and cooperate in disciplinary investigations.

"*Mental State.* The Respondent knowingly violated his duties.

"*Injury.* As a result of the Respondent's misconduct, the Respondent caused actual harm to his client.

"*Aggravating or Mitigating Factors.* Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following aggravating factors present:

"Prior Disciplinary Offenses. In 2005, the Disciplinary Administrator informally admonished the Respondent for having violated KRPC 1.1, KRPC 1.3, KRPC 1.15, and KRPC 5.5, in cases numbered DA8754 and DA9095.

"At the hearing on this matter, the Hearing Panel questioned the Respondent regarding whether he had been disciplined by the authorities in the state of Missouri. The exchange was as follows:

'Q. [Mr. McInteer] Do you have any disciplinary matters that have been handled across the line in Missouri?

'A. I have—the most recent one ironically was a friend of Ms. Wakes who had also federal lawsuit at the same time that had already been filed. She—we were here taking depositions in Topeka and El Dorado and everywhere else. At some point the defendants submitted some—some supplemental interrogatories, which my client refused to answer, and so I said you have to answer them, Judge Bostwick is going to dismiss this case if you didn't answer them, which he did issue an order to that effect. I said you've got to answer the questions, he's going to dismiss your case and I'm going to withdraw. And they've offered money. She refused the settlement. Refused to answer the discovery. I withdrew. At some point Judge Bostwick did

dismiss the case and the complaint came against me, which was—I was exonerated on that complaint. I didn't do—

'Q. I'm sorry. My question—

'A. Do I have—do I have any that were finding of fault?

'Q. Yes, that's what I was asking, sir. I wasn't asking if there had been allegations against you.

'A. You know, if there are I can't think of any right now. I can think of complaints, speeding tickets, anything like that, but I can't think of any off the top of my head where there was an actual finding. I'm not telling you that there is nothing over there. I'm just telling you I don't—I can't recall off the top of my head right now.

. . . .

'THE WITNESS: I'm thinking really hard to try and think, 'cause I don't want to mislead anybody there. I'm not telling you there's not anything over there. I really don't—can't name you any case in particular.'

Following the hearing, the Missouri disciplinary authorities forwarded a cover letter, a business records affidavit, and a copy of six admonitions. The admonitions were dated December 4, 1999, January 19, 2000, August 3, 2001, August 1, 2003, August 10, 2004, and August 10, 2004. . . .

"Dishonest or Selfish Motive. The Respondent provided Ms. Wakes with false information. As such, the Hearing Panel concludes that dishonesty is a factor in this case.

"A Pattern of Misconduct. The Respondent engaged in a pattern of misconduct by repeatedly failing to communicate with Ms. Wakes, by failing to timely respond to motions in the underlying suit, and by failing to cooperate in the disciplinary investigation. Accordingly, the Respondent engaged in a pattern of misconduct.

"Multiple Offenses. The Respondent violated KRPC 1.1, KRPC 1.3, KRPC 1.4, KRPC [1.15], KRPC 1.16, KRPC 3.2, KRPC 7.1, KRPC 8.1(b), KRPC 8.4(c), Kan. Sup. Ct. R. 207(b), and Kan. Sup. Ct. R. 211(b). As such, the Respondent committed multiple offenses.

"Bad Faith Obstruction of the Disciplinary Proceeding by Intentionally Failing to Comply with Rules or Orders of the Disciplinary Process. The Respondent knew that he was required to provide written response to the complaint filed by Ms. Wakes. The Respondent never filed a response. Additionally, the Respondent knew that he was required to file a timely written Answer to the Formal Complaint. The Respondent failed to file a timely written Answer to the Formal Complaint. The Hearing Panel therefore, concludes that the Respondent obstructed the disciplinary proceeding.

"Submission of False Evidence, False Statements, or Other Deceptive Practices During the Disciplinary Process. Throughout his testimony, the Respondent engaged in deceptive practices. The exchange between Mr. McInteer and the Respondent is an example of the Respondent's evasive testimony. Additionally, the Respondent's testimony that he could not 'recall off the top of [his] head' whether he had been disciplined in Missouri is incredible, in light of the fact that he has

been informally admonished in Missouri on six occasions. As such, the Hearing Panel concludes that the Respondent submitted unbelievable testimony and engaged in deceptive practices during the hearing.

"Refusal to Acknowledge Wrongful Nature of Conduct. In his initial responses and continuing throughout his testimony at the hearing, the Respondent refused to acknowledge the fact that he missed the statute of limitations. In addition to the Respondent's refusal to acknowledge that he missed the statute of limitations, the Respondent failed to show any remorse for his misconduct.

"Substantial Experience in the Practice of Law. The Kansas Supreme Court admitted the Respondent to practice law in 1993. At the time the Respondent engaged in misconduct, the Respondent had been practicing law for a period of approximately 10 years. Accordingly, the Hearing Panel concludes that the Respondent had substantial experience in the practice of law at the time he engaged in the misconduct.

"Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following mitigating circumstance present:

"Previous Good Character and Reputation in the Community Including any Letters from Clients, Friends, and Lawyers in Support of the Character and General Reputation of the Attorney. The Respondent is an active and productive member of the bar in Kansas City. He enjoys the respect of his peers and clients and generally possesses a good character and reputation as evidenced by several letters received by the Hearing Panel.

"In addition to the above-cited factors, the Hearing Panel has thoroughly examined and considered the following Standards:

'Suspension is generally appropriate when:
(a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or
(b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.' Standard 4.42.

'Suspension is generally appropriate when a lawyer knowingly deceives a client, and causes injury or potential injury to the client.' Standard 4.62.

'Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession, and causes injury or potential injury to a client, the public, or the legal system.' Standard 7.2."

The panel then set forth its recommended discipline:

"The Deputy Disciplinary Administrator recommended that the Respondent be suspended for one year. Counsel for the Respondent recommended that the Respondent be censured and that the censure be published in the Kansas Reports.

"Based upon the findings of fact, conclusions of law, the Respondent's evasive testimony, his extensive disciplinary history, and the Standards listed above, the Hearing Panel unanimously recommends that the Respondent be suspended from the practice of law in the state of Kansas for a period of one year.

"Costs are assessed against the Respondent in an amount to be certified by the office of the Disciplinary Administrator."

## DISCUSSION

In a disciplinary proceeding, this court considers the evidence, the findings of the disciplinary panel, and the arguments of the parties and determines whether violations of KRPC exist and, if they do, what discipline should be imposed. Attorney misconduct must be established by substantial, clear, convincing, and satisfactory evidence. *In re Lober*, 276 Kan. 633, 636, 78 P.3d 442 (2003); see also Supreme Court Rule 211(f) (2006 Kan. Ct. R. Annot. 284) (misconduct to be established by clear and convincing evidence).

The respondent filed a statement with the clerk stating he does not take exception to the panel's final report. Therefore, the hearing panel's final report is deemed admitted. See Supreme Court Rule 212(c) (2006 Kan. Ct. R. Annot. 295).

We conclude the panel's findings of fact are supported by clear and convincing evidence and support the panel's conclusions of law. Further, we adopt the panel's findings of fact and conclusions of law.

With respect to the discipline to be imposed, the panel's recommendation that the respondent be suspended from the practice of law in the state of Kansas for a period of 1 year is advisory only and shall not prevent the court from imposing discipline greater or lesser than that recommended by the panel or the Disciplinary Administrator. Rule 212(f).

Respondent handled the Wakes case very badly, both as to lack of competence as well as engaging in unethical behavior. Respondent compounded his fault by failing to cooperate with the Disciplinary Administrator's investigation of the complaint. We agree with the panel that respondent "submitted unbelievable testimony and engaged in deceptive practices during the panel hearing. His testimony before the panel that he did not recall if he had been professionally disciplined in Missouri is truly amazing, when, in fact, he had been admonished six times in that state.

The majority of the court accepts the 1-year suspension recommended by the panel although a minority of the court would impose a more severe discipline.

IT IS THEREFORE ORDERED that James Lee Daniels be suspended from the practice of law in the state of Kansas for a period of 1 year, effective the date of this opinion, in accordance with Supreme Court Rule 203(a)(2) (2006 Kan. Ct. R. Annot. 243).

IT IS FURTHER ORDERED that respondent forthwith comply with Supreme Court Rule 218 (2006 Kan. Ct. R. Annot. 314), that the costs of these proceedings be assessed to the respondent, and that this opinion be published in the official Kansas Reports.