No. 100,863

In the Matter of DOUGLAS W. DOWELL, *Respondent*.

(196 P.3d 915)

Opinion filed December 5, 2008.

*Alexander M. Walczak*, deputy disciplinary administrator, argued the cause, and *Stanton A. Hazlett*, disciplinary administrator, was with him on the formal complaint for petitioner.

*Douglas W. Dowell*, respondent, argued the cause pro se.

*Per Curiam*: This is an original uncontested proceeding in discipline filed by the office of the Disciplinary Administrator against the respondent, Douglas W. Dowell, a Kansas City attorney admitted to the practice of law in Kansas in 2002.

The hearing panel found that the respondent violated Kansas Rules of Professional Conduct (KRPC) 1.1 (2007 Kan. Ct. R. Annot. 384) (competence); KRPC 1.3 (2007 Kan. Ct. R. Annot. 398) (diligence); KRPC 1.4(a) (2007 Kan. Ct. R. Annot. 413) (communication); KRPC 1.15 (2007 Kan. Ct. R. Annot. 473) (safekeeping property); KRPC 8.4(g) (2007 Kan. Ct. R. Annot. 559) (engaging in conduct adversely reflecting on fitness to practice law); and Kansas Supreme Court Rule 211 (2007 Kan. Ct. R. Annot. 304) (formal hearings).

Before a panel of the Kansas Board for Discipline of Attorneys, the respondent stipulated that the factual allegations contained in the formal complaint were true and resulted in the disciplinary rules violations set forth therein. Respondent then testified in mitigation of his conduct.

The Deputy Disciplinary Administrator recommended the respondent be suspended from the practice of law for an indefinite period. The hearing panel unanimously accepted this recommendation. Respondent filed no exceptions to the final hearing report.

The panel made the following findings of fact and conclusions of law:

## "FINDINGS OF FACT

"Based upon the Respondent's stipulation and the evidence introduced at the hearing, the Hearing Panel finds the following facts, by clear and convincing evidence:

. . . .

"2.   The Respondent practiced law with Brad Medlin until July, 2005, when Mr. Medlin left the practice and moved to Florida. Thereafter, in September, 2005, the Respondent formed a partnership with Sarah A. Sypher.

"3.   The Respondent and Ms. Sypher remained as law partners from September, 2005, until April 20, 2007.

"4.   During the period of time the Respondent practiced law with Ms. Sypher, the Respondent failed to return telephone calls to clients, the Respondent failed to diligently represent clients, the Respondent failed to take necessary action in many bankruptcy cases and received 12 orders to show cause based upon his inaction, the Respondent accepted cases that he was not competent to handle, and the Respondent provided Ms. Sypher with false information regarding the status of cases.

"5.   On April 20, 2007, Ms. Sypher and Christopher Kuehn, an attorney, confronted the Respondent regarding the problems in his practice. Ms. Sypher and Mr. Kuehn encouraged the Respondent to seek assistance in handling what appeared to be personal problems.

"6.   At the hearing on this matter, the Respondent acknowledged that he suffers from depression, that he may suffer from attention deficit disorder, and that he is an alcoholic. Following his meeting with Ms. Sypher and Mr. Kuehn on April 20, 2007, the Respondent reported to Mirror's, Inc., for intensive outpatient alcohol treatment. The Respondent successfully completed the program and continues to participate in AA meetings. Additionally, after the Respondent ceased practicing law, the Respondent contacted Don Zemites with the Kansas Impaired Lawyers Assistance Program. The Respondent worked with Mr. Zemites in addressing his alcoholism until Mr. Zemites' death. Since Mr. Zemites' death, the Respondent has not sought or obtained assistance from the Kansas Impaired Lawyers Assistance Program.

"7.   The Respondent has not sought or obtained an evaluation or treatment for depression or attention deficit disorder.

"8.   After leaving the practice of law on April 20, 2007, the Respondent did not contact his clients, opposing counsel, or the courts in which he had pending cases to notify them that he would no longer be practicing law. The Respondent left the practice with the understanding that Ms. Sypher would take over the representation and assist his clients. The Respondent took no action to assist Ms. Sypher with the transition.

### "Representation of [D.G.]

"9.   In May, 2006, [D.G.] retained the Respondent to file an action in bankruptcy in her behalf. At that time, [D.G.] was three months behind in her pay-

ments on her home mortgage. The Respondent recommended that she file a Chapter 13 bankruptcy action.

"10.   The Respondent filed a Chapter 13 bankruptcy case in behalf of [D.G.]. After [D.G.] made her first payment on her plan, the bankruptcy court dismissed [D.G.'s] Chapter 13 case because the Respondent failed to file copies of pay stubs and income tax returns.

"11.   The Respondent filed a second Chapter 13 case in behalf of [D.G.]. However, the bankruptcy court dismissed [D.G.'s] second Chapter 13 case because the Respondent failed to include a confirmable plan.

"12.   After the court dismissed the second Chapter 13 case, [D.G.] began negotiating directly with the lender on her home mortgage. [D.G.] and the mortgage company reached an agreement. [D.G.] agreed to make her monthly payments and pay an additional amount to cover her arrearage. The mortgage company agreed that if [D.G.] paid as agreed for a period of time, the mortgage company would restore the mortgage to good standing.

"13.   The Respondent advised [D.G.] to not make the agreed payments because the mortgage company could still foreclose on the loan. Relying on the Respondent's advice, [D.G.] discontinued making payments.

"14.   The Respondent also advised [D.G.] that she should file a Chapter 7 bankruptcy to satisfy her indebtedness. However, the Respondent failed to properly research the possibility of [D.G.] filing a Chapter 7 bankruptcy. As it turns out, [D.G.] was ineligible to file a Chapter 7 bankruptcy because of the recency of her husband's prior Chapter 7 bankruptcy. As a result, [D.G.] lost her home and her vehicle. [D.G.] would not have been eligible to file a Chapter 7 bankruptcy until 2008.

"Representation of [T.J.]

"15.   In March, 2005, [T.J.] retained Brad Medlin to file an action in bankruptcy. After Mr. Medlin left the practice of law, the Respondent replaced Mr. Medlin as [T.J.'s] attorney.

"16.   While the bankruptcy case was pending, . . . a lien [was filed] on [T.J.'s] home. [T.J.] became aware of the lien in July, 2006, when he attempted to take a reverse mortgage on the property. The trustee informed [T.J.] that the lien was not valid. [T.J.] requested that the Respondent take action to have the lien removed. The Respondent took no action to have the lien removed.

"17.   [T.J.] and his friend, [M.A.], repeatedly telephoned the Respondent seeking information regarding the representation. The Respondent failed to return their telephone calls.

"18.   On November 30, 2006, [T.J.] died. Following [T.J.'s] death, the Respondent filed a motion to avoid the lien. The Court found that the Respondent failed to file a motion for substitution of parties and that the motion to avoid the lien was improper because [T.J.] was deceased and the Respondent lacked standing to file the motion.

"19. Because of the posture of the bankruptcy case, the Respondent informed [T.J.'s] family that he was not competent to handle the case and instructed [T.J.'s] family to find a new lawyer. The Respondent took no action to assist [T.J.'s] family in finding competent counsel.

### "Representation of [T.L.P.]

"20. During 2004, [T.L.P.] retained the Respondent to represent him in a bankruptcy action and to represent him in a lawsuit against Commerce Bank in Joplin, Missouri, for providing inaccurate information to the credit reporting agencies. [T.L.P.] paid the Respondent an attorney fee.

"21. Thereafter, the Respondent filed an action in bankruptcy, pursuant to Chapter 13 in behalf of [T.L.P.]. However, the bankruptcy court dismissed the action because the Respondent failed to file the appropriate documents. Later, in 2005, [T.L.P.] paid the Respondent an additional attorney fee and the Respondent refiled the bankruptcy case.

"22. In early 2007, the Respondent moved to a different residence and his law firm moved to a different office. The Respondent employed [T.L.P.] to assist him with moving. While assisting the Respondent in moving the Respondent's residence, [T.L.P.] was carrying bags of trash to the receptacle. When doing so, some items fell out of the bags. When [T.L.P.] went to return the trash to the bags, he discovered that what had fallen out of the trash bags included original documents from [T.L.P.'s] bankruptcy case, [T.L.P.'s] only copy of his income tax return, his actual Lowe's credit card, and his credit card documents. [T.L.P.] looked through the trash and observed what appeared to be other bankruptcy clients' documents and property. The Respondent instructed [T.L.P.] to throw the items away.

"23. After leaving the practice of law in April 20, 2007, the Respondent failed to notify [T.L.P.] that he would no longer provide him with representation in his Chapter 13 bankruptcy case and his action against Commerce Bank.

### "CONCLUSIONS OF LAW

"1. Based upon the Respondent's stipulations and the findings of fact above, the Hearing Panel concludes as a matter of law that the Respondent violated KRPC 1.1, KRPC 1.3, KRPC 1.15, and KRPC 8.4(g), and Kan. Sup. Ct. R. 211(b), as detailed below.

"2. Lawyers must provide competent representation to their clients. KRPC 1.1. 'Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.' The Respondent violated KRPC 1.1 when he (1) accepted cases that he was not competent to handle, (2) failed to provide the bankruptcy court with required documentation in behalf of [D.G.] and [T.L.P.], (3) failed to file a confirmable plan for [D.G.], (4) advised [D.G.] to not make the agreed payments to her mortgage company, (5) advised [D.G.] to file a Chapter 7 bankruptcy case at a time when she was ineligible to do so, and (6) filed a motion to avoid the lien in behalf of [T.J.] after

[T.J.] died. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 1.1.

"3.    Attorneys must act with reasonable diligence and promptness in representing their clients. See KRPC 1.3. In this case, the Respondent failed to provide diligent representation to [D.G.], [T.J.], and [T.L.P.] by failing to timely advance their cases. Because the Respondent failed to act with reasonable diligence and promptness in representing his clients, the Hearing Panel concludes that the Respondent violated KRPC 1.3.

"4.    KRPC 1.4(a) provides that '[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.' In this case, the Respondent violated KRPC 1.4(a) when he failed to return his clients' telephone calls, including [T.J's] and [M.A.'s] telephone calls. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 1.4(a).

"5.    Lawyers must keep the property of their clients safe. See KRPC 1.15. The Respondent failed to keep [T.L.P.'s] property safe when he deposited it into the trash at his residence. Accordingly, the Hearing Panel concludes that the Respondent failed to properly safeguard [T.L.P.'s] property.

"6.    'It is professional misconduct for a lawyer to . . . engage in any other conduct that adversely reflects on the lawyer's fitness to practice law.' KRPC 8.4(g). The Respondent provided Ms. Sypher, his partner, with false information regarding the status of his cases. Additionally, the Respondent placed [T.L.P's] personal property in his trash at his residence. Providing false information to his partner and throwing away [T.L.P.'s] personal property adversely reflects on the Respondent's fitness to practice law. As such, the Hearing Panel concludes that the Respondent violated KRPC 8.4(g).

"7.    The Kansas Supreme Court Rules require attorneys to file Answers to Formal Complaints. Kan. Sup. Ct. R. 211(b) provides the requirements:

'The Respondent shall serve an answer upon the Disciplinary Administrator within twenty days after the service of the complaint unless such time is extended by the Disciplinary Administrator or the hearing panel.'

In this case, the Respondent violated Kan. Sup. Ct. R. 211(b) by failing to file a written Answer to the Formal Complaint. Accordingly, the Hearing Panel concludes that the Respondent violated Kan. Sup. Ct. R. 211(b)."

## RECOMMENDED DISCIPLINE

In considering the appropriate discipline, the hearing panel addressed the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions, specifically, the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"*Duty Violated*. The Respondent violated his duty to his clients to provide diligent representation and adequate communication. The Respondent also violated his duty to his clients to safeguard his clients property.

"*Mental State*. The Respondent knowingly violated his duty.

"*Injury*. As a result of the Respondents misconduct, the Respondent caused actual injury to his clients. [T.J.] died while waiting for the Respondent to provide the assistance for which he was hired. Additionally, Ms. Sypher testified that two additional clients . . . died while waiting for the Respondent to take action in their pending cases.

"*Aggravating or Mitigating Factors*. Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following aggravating factors present:

"A Pattern of Misconduct. Included in this case are two complaints. The complaints involve similar misconduct. Accordingly, the Respondent engaged in a pattern of misconduct.

"Multiple Offenses. The Respondent violated KRPC 1.1, KRPC 1.3, KRPC 1.4, KRPC 1.15, KRPC 8.4(g), and Kan. Sup. Ct. R. 211(b). As such, the Respondent committed multiple offenses.

"Vulnerability of Victim. The Respondent's clients were vulnerable to the Respondent's misconduct because of their financial difficulties.

"Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following mitigating circumstances present:

"Absence of a Prior Disciplinary Record. The Respondent has not previously been disciplined.

"Personal or Emotional Problems if Such Misfortunes have Contributed to a Violation of the Kansas Rules of Professional Conduct. According to the Respondent, he has suffered from depression during the course of the past few years. Additionally, the Respondent identifies himself as an alcoholic. The Respondent participated in intensive outpatient treatment for alcoholism and has attended, on average, three Alcoholics Anonymous meetings each week for the past year. The Respondent's impairments contributed to his misconduct.

"The Present and Past Attitude of the Attorney as Shown by the Respondent's Cooperation During the Hearing and the Respondent's Acknowledgment of the Transgressions. The Respondent fully cooperated in the disciplinary hearing as exhibited by his complete acknowledgment of the misconduct.

"Inexperience in the Practice of Law. The Kansas Supreme Court admitted the Respondent to practice law in 2002. At the time the Respondent's misconduct began, he had been practicing law for a period of three years. Accordingly, the Hearing Panel concludes that Respondent was inexperienced in the practice of law at the time he engaged in the misconduct.

"Remorse. At the hearing on the Formal Complaint, the Respondent expressed genuine remorse.

"In addition to the above-cited factors, the Hearing Panel has thoroughly examined and considered the following Standards:

'Suspension is generally appropriate when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client.' Standard 4.12.

'Suspension is generally appropriate when:
(a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or
(b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.' Standard 4.42.

'Suspension is generally appropriate when a lawyer engages in an area of practice in which the lawyer knows he or she is not competent, and causes injury or potential injury to a client.' Standard 4.52."

The hearing panel then stated:

"Accordingly, based upon the findings of fact, conclusions of law, and the Standards listed above, the Hearing Panel unanimously recommends that the Respondent be indefinitely suspended from the practice of law in the State of Kansas. The Respondent shall comply with Kan. Sup. Ct. R. 218.

"It is clear to the Hearing Panel that the Respondent is not currently fit to practice law. The Respondent acknowledges that he suffers from depression and the Respondent also believes that he may suffer from attention deficit disorder. However, the Respondent has not sought or obtained evaluation or treatment for these conditions, because, as he testified, of his financial limitations. It is incumbent upon the Respondent to seek and obtain evaluation, and if appropriate, sufficient treatment for these conditions prior to seeking reinstatement to the practice of law."

## DISCUSSION

In a disciplinary proceeding, this court considers the evidence, the findings of the disciplinary panel, and the arguments of the parties and determines whether violations of KRPC exist and, if they do, what discipline should be imposed. Attorney misconduct must be established by substantial, clear, convincing, and satisfactory evidence. *In re Lober*, 276 Kan. 633, 636, 78 P.3d 442 (2003); see also Supreme Court Rule 211(f) (2007 Kan. Ct. R. Annot. 304) (misconduct to be established by clear and convincing evidence).

Here, respondent stipulated to the factual allegations contained in the formal complaint and the disciplinary rules violations charged therein. Additionally, he filed no exceptions, the results of

which render the final hearing report to be deemed admitted. Supreme Court Rule 212(c) (2007 Kan. Ct. R. Annot. 317). We conclude the panel's findings of fact are supported by clear and convincing evidence and support the panel's conclusions of law, and we adopt the panel's findings and conclusions.

By virtue of respondent's stipulation before the panel to the facts and disciplinary rule violations, the only matter at issue before the panel was the appropriate discipline to be recommended.

At the hearing before this court, respondent concurred with the hearing panel's recommendation, stating he was not able to practice law at the present time because of his depression. Consequently, we adopt the panel's recommendation.

IT IS THEREFORE ORDERED that Douglas W. Dowell be and he is hereby indefinitely suspended from the practice of law in Kansas, effective upon the filing of this opinion.

IT IS FURTHER ORDERED that Douglas W. Dowell shall comply with Supreme Court Rule 218 (2007 Kan. Ct. R. Annot. 337).

IT IS FURTHER ORDERED that Douglas W. Dowell shall comply with Supreme Court Rule 219 (2007 Kan. Ct. R. Annot. 350) if he seeks reinstatement. As part of the reinstatement procedure, the Disciplinary Administrator may require an evaluation by a health care provider chosen by the Disciplinary Administrator in order to determine if respondent is mentally and physically competent to engage in the active and continuous practice of law in this state.

IT IS FURTHER ORDERED that this opinion be published in the official Kansas Reports and that respondent pay the costs of these proceedings.